IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COACH, INC. and COACH
SERVICES, INC.,

        Plaintiffs,

      vs.               Case No.
                      13-cv-7165(SDY)

DI DA IMPORT AND EXPORT INC.
(d/b/a DI DA NEW YORK),

        Defendant.
----------------------------)

Volume I

VIDEOTAPED DEPOSITION OF AMY XU SHI

New York, New York

Friday, August 22, 2014

Reported by:
SHAUNA STOLTZ-LAURIE, RPR, CLR
CSR NO. 810490
JOB NO. 12372

```
 1                    Shi
 2         behalf of Di Da and Amy Shi, and this is
 3         also a deposition of Di Da, the
 4         corporation.
 5              THE VIDEOGRAPHER:  Will the court
 6         reporter please swear in the witness.
 7    A M Y    X U    S H I   ,   called as a
 8    witness, having been duly sworn by a Notary
 9    Public, was examined and testified as
10    follows:
11    EXAMINATION BY
12    MR. McKEY:
13         Q.   Okay, a couple of preliminary
14    matters.
15              Ms. Shi, you got some disturbing
16    news earlier this morning, and thank you for
17    continuing on the deposition.
18              The rules of the deposition are, as
19    always, you can take a break whenever you
20    want it as long as a question is not pending.
21         A.   Okay.
22         Q.   Given what happened this morning,
23    if at any time you need to take a break, just
24    let us know, I we'll take a break, and you do
25    what you need to do.
```

```
 1                        Shi
 2          A.    Okay.
 3          Q.    All right?
 4                Counsel and I and you discussed
 5      prior to the deposition that if for some
 6      reason this becomes too much today, we'll
 7      take a break, we'll reschedule, let you
 8      attend to some personal matters, and come
 9      back at another time.
10          A.    Okay.
11                MR. McKEY:   Is that what we agreed
12          to?
13                MS. SHIELDS:   Yes.   Yes.
14          Q.    Okay.  Could you please state and
15      -- and spell your name for the record.
16          A.    My first name is Amy, A-m-y, last
17      name S-h-i, middle name X-u.
18          Q.    And, as your counsel indicated,
19      you're here for two purposes today, for your
20      personal deposition and what's called a
21      30(b)(6) deposition, which is a corporate
22      representative deposition.  Is that your
23      understanding?
24          A.    Yes.
25          Q.    Okay.  I'm going to show you a
```

```
 1                    Shi
 2         Q.   And just --
 3         A.   (Laughing) Yeah.
 4         Q.   -- it seemed like you were going to
 5    go further, and I wanted to stop you.
 6              So how many times did you discuss
 7    item number nine with Carolyn?
 8         A.   How many times?
 9         Q.   How many times.
10         A.   Yesterday.
11         Q.   Okay.  Did you meet to prepare for
12    your deposition today, with Carolyn?
13         A.   Well, prepare?  What do you mean by
14    prepare?  Like --
15         Q.   Well, let me ask you a different
16    question.  What did you do --
17         A.   Um-hm?
18         Q.   -- to prepare for your deposition
19    today?
20         A.   Oh.  So she tell me what's the
21    subject I'm going to be questioned about --
22         Q.   Um-hm?
23         A.   -- and asked if I will --
24         Q.   No, no.
25         A.   Oh, sorry about that.  Yeah.
```

```
 1                      Shi
 2              And then -- and then just tell me
 3       to dress formal, the address.
 4          Q.   I don't want to know what she told
 5       you.
 6          A.   (Laughing) Okay.
 7              MS. SHIELDS:  We charged a lot for
 8          that advice.
 9              (Laughter).
10          Q.   And you look very formal, by the
11       way, I want to let you know.
12          A.   Yeah, because it's my first time,
13       so -- yeah.
14              That -- that -- that was it.
15          Q.   Okay.
16          A.   Yeah.
17          Q.   So did you talk to anybody
18       internally with -- and let's just focus on
19       item number nine here --
20          A.   Okay.
21          Q.   -- okay?
22              Did you talk with anybody at Di Da
23       to familiarize yourself with the issues
24       identified in item number nine?
25          A.   Yes.
```

```
 1                          Shi
 2              Q.    Who did you speak with?
 3              A.    Hong Zhu, Sam Zhu and Long Zhu.
 4              Q.    Okay.  Did you review any documents
 5         relating to item number nine?
 6              A.    No.
 7              Q.    Okay.  Do you see within item
 8         number nine --
 9              A.    Um-hm?
10              Q.    -- it asks -- it includes within
11         that "the identification of officers of Di
12         Da"?
13              A.    Um-hm.
14              Q.    Okay.  So those were the questions
15         I was asking you, and you were unable to
16         answer them, correct?
17                   MS. SHIELDS:  Objection.
18                   She answered them.
19                   MR. McKEY:  Okay.  We'll swear you
20              in next if you want to testify. We're in
21              the Northern District of Illinois.  They
22              don't take too kindly to it.  So
23              objections are to form and foundation.
24              You can smile all you want.  I know
25              Judge (unintelligible).  He's not going
```

```
 1                     Shi
 2          Q.   New York, okay.
 3               And who incorporated Di Da?
 4          A.   Sam.
 5          Q.   Sam --
 6          A.   Zhu.
 7          Q.   -- Zhu.
 8               Okay.  He did it himself.
 9          A.   That I -- I don't know, because at
10     that time, I'm still in college.
11          Q.   Okay.  Do you know if Di Da is a
12     partnership?
13          A.   No.
14          Q.   Do you know if Di Da is a limited
15     liability corporation?
16          A.   I don't know.
17          Q.   Do you know if Di Da is a limited
18     liability partnership?
19          A.   No, I don't know.
20          Q.   Okay.  Do you know if Di Da is a
21     d/b/a?
22          A.   I don't -- I don't understand what
23     d/b/a is.
24          Q.   So you don't know the answer to
25     that question.
```

```
 1                     Shi
 2         A.    Yeah.
 3         Q.    So you don't know the incorporation
 4    format of Di Da, correct?
 5         A.    Yes.
 6         Q.    Okay.  Are there any partners in
 7    Di Da?
 8         A.    No.
 9         Q.    No partners.
10         A.    No partners.
11         Q.    What did you do to determine if
12    there are any partners in Di Da?
13         A.    Because there's no one else besides
14    Long Zhu and Hong Zhu who invest money.
15              MR. McKEY:  So can you read back to
16         my question.
17         Q.    Listen to my question, please.
18         A.    Okay.
19              (Record read, as follows:
20              "What did you do to determine if
21         there are any partners in Di Da?")
22         A.    Because --
23              What do I do to determine?
24              Because there's no one else who
25    invest the money besides them.
```

1                              Shi

2        saw that document in 2014 -- is that correct?

3        -- this year.

4             A.    Well, I think it's long ago.  It's

5        definitely not this year.

6             Q.    Okay.  When's "long ago"?

7             A.    It's not this year.

8                   Can I just say maybe 2012?

9             Q.    You can say whatever you want.

10            A.    But I -- I cannot remember that

11       clearly.

12            Q.    Okay.  What documents did you

13       review in prep -- in preparation for your

14       deposition today?

15            A.    I didn't review anything.

16            Q.    But you're here to testify on

17       behalf of the corporation as to all the items

18       listed on page three of Deposition Exhibit

19       number 2, correct?

20            A.    Yes.

21            Q.    And you did nothing to prepare for

22       that -- correct? --

23                  MS. SHIELDS:  Objection.

24            Q.    -- other than to be told to wear

25       formal clothes.

Page 44

1                          Shi

2          Q.   Okay.  When did that -- and was --

3     when did that meeting take place?

4               MR. McKEY:  Strike all that.

5          Q.   When did that meeting with your

6     lawyer take place?

7          A.   Yesterday.

8          Q.   Okay.  How long did it last?

9          A.   30 minutes.

10         Q.   30 minutes.

11         A.   Um-hm.

12         Q.   Okay.  Where was that meeting?

13         A.   In Flushing.

14         Q.   Okay.  Prior to the meeting

15    yesterday with your lawyers, what did you do

16    to prepare for your deposition here today?

17         A.   Nothing.

18         Q.   Nothing.

19              So you prepared with your lawyer

20    yesterday for 30 minutes, correct?

21         A.   Yes.

22         Q.   Yes?

23         A.   Yes.

24         Q.   Okay.  And you did nothing else

25    other than that 30-minute meeting to prepare

```
 1                         Shi
 2          for your deposition today; is that correct?
 3               A.    I just -- yeah.  Yes.
 4               Q.    Yes.
 5                     Okay. What's your address?  Where
 6          do you live?
 7               A.    33-41 Utopia Parkway, Flushing, New
 8          York.
 9               Q.    Okay.  How long have you lived
10          there?
11               A.    Four to five years.
12               Q.    Four to five years?
13               A.    Yes.
14               Q.    Okay.  Where did you live prior to
15          that?
16               A.    Also in Flushing, but I -- I don't
17          remember -- it's 43 some -- oh, Main Street,
18          Flushing.
19               Q.    Okay, let's start this way.
20                     Where did you go to high school?
21               A.    Bayside High School.
22               Q.    Okay.  Where is that?
23               A.    Bayside, New York.
24               Q.    Bayside, New York.
25                     Okay.  And when did you graduate?
```

```
 1                         Shi
 2            record at approximately 10:45 a.m.
 3            August 22nd, 2014.
 4                 (Recess taken.)
 5                 THE VIDEOGRAPHER:  We're now on the
 6            record beginning approximately
 7            11:28 a.m. August 22nd, 2014.  This will
 8            begin videotape number two of the
 9            deposition of Amy Xu Shi.
10            Q.   All right.  I'm going to refer you
11       back to Deposition Exhibit number 2, which is
12       the 30(b)(6) Notice for Di Da, and
13       specifically to page three.  I think you had
14       it there already.
15                 On item one, can you take a moment
16       and read that, please?
17            A.   (Reading) Yes.
18            Q.   Okay.  Are you prepared to testify
19       to item one today?
20            A.   I'm -- no.
21            Q.   You're not?
22            A.   Just base on my knowledge.
23            Q.   Are you prepared to testify on item
24       one today?
25            A.   Yes.
```

Page 85

1                          Shi

2          Q.    Okay.  What did you do to prepare

3      yourself to address the issues raised in item

4      one for your testimony here today?

5          A.    Oh.  Just base on my knowledge --

6          Q.    Okay.  Did you do --

7          A.    -- so no -- no preparations.

8                Sorry.

9          Q.    So no preparation (speaking

10     simultaneously) --

11         A.    No.

12         Q.    You need to wait until I finish my

13     question.

14         A.    Oh.  Sorry.

15         Q.    It's all right.

16               So there was no preparation to

17     address the issues raised in item of -- on

18     page three of Deposition Exhibit 2; is that

19     correct?

20         A.    Yes.

21         Q.    Can you read item number two,

22     please?

23         A.    (Reading) Yeah.

24         Q.    Are you prepared to address the

25     issues raised in item number two on page

```
 1                         Shi
 2       three of Deposition Exhibit 2?
 3            A.   No.
 4            Q.   Okay.  Item number three, can you
 5       read that, please?
 6            A.   (Reading).
 7                 MS. SHIELDS:  I'm not sure the
 8            witness understood your question.
 9            Q.   Item number three, please can you
10       read it?
11            A.   Okay.  (Reading) Yeah.
12            Q.   Are you prepared to testify to the
13       issues raised in item number three on page
14       three of Exhibit number 2 today?
15            A.   No.
16                 MS. SHIELDS:  I think the witness
17            is thinking your --
18                 MR. McKEY:  What -- if you want to
19            answer for her, I swear to God, we'll
20            swear you in.  That's great.  If not --
21                 MS. SHIELDS:  I want the record to
22            be clear.
23                 MR. McKEY:  So do I, and I think it
24            is.
25                 MS. SHIELDS:  Okay.
```

Page 141

```
 1                        Shi
 2          Q.   Who's your cousin?
 3          A.   Sam's little brother.
 4          Q.   That's his name?
 5          A.   Jack Zhu.
 6          Q.   Jack Zhu, where is he located?
 7          A.   33-41 Utopia Parkway.
 8          Q.   Where?
 9          A.   New York.
10          Q.   Has anybody checked the hard drive
11     of that computer to see if those emails could
12     be recovered?
13          A.   No.
14          Q.   Has anybody instructed Di Da to
15     maintain that computer so that those emails
16     are not destroyed or otherwise modified?
17          A.   I'm sorry?
18          Q.   Has anybody instructed Di Da to
19     maintain that computer so that those files
20     are not destroyed or otherwise modified?
21          A.   No.
22          Q.   Do you know if they have been
23     destroyed or otherwise modified?
24          A.   I don't know.
25          Q.   Do you know if the hard drive in
```

Page 142

```
 1                    Shi
 2      that computer has been changed?
 3           A.   I don't know.
 4           Q.   And  nobody's taken steps to find
 5      out.
 6           A.   No.
 7           Q.   That's correct; nobody has taken
 8      any steps to find out?
 9           A.   Yes.
10                MR. McKEY:  All right.  We'll go to
11                1:00, and take lunch then.  It's 12:33.
12                Should we go until 1:00, and then take
13                lunch then?
14                MS. SHIELDS:  That's fine.
15                MR. McKEY:  Can we mark this as
16                Deposition Exhibit -- what are we up to,
17                5?
18                THE COURT REPORTER:  5.
19                (Discussion off the record.)
20                ([Shi] Exhibit 5, Di Da Responses
21                to Plaintiff's First Set of
22                Interrogatories, marked for
23                identification, as of this date.)
24      REQ       MR. McKEY: Before we get to
25      Deposition Exhibit number 5, on the record
```

```
 1                        Shi
 2       A F T E R N O O N    S E S S I O N
 3            THE VIDEOGRAPHER:  We're now on the
 4       record beginning approximately 2:15 p.m.
 5       August 22nd, 2014.  This will begin
 6       videotape number three of the deposition
 7       of Amy Xu Shi.
 8            MR. McKEY:  Do you have a statement
 9       for the record?
10            MS. SHIELDS:  Yes.
11            The witness can't go forward
12       without having a Mandarin interpreter,
13       because she's not understanding your
14       questions, in particular her difficulty
15       with verbs, and it's causing her to
16       giving testimony that's contrary to what
17       she wants to give, and that combined
18       with the death of her great-grandfather
19       today is really too much for her today.
20            MR. McKEY:  Okay.  And let me state
21       for the record that we asked if she
22       needed an interpreter for the deposition
23       today, and we were told no.  When I
24       found out this morning about the death
25       of her great --
```

```
 1                      Shi
 2            Great-grandfather was it?
 3            MS. SHIELDS:  That's right.
 4            MR. McKEY:  -- her
 5       great-grandfather, I offered to suspend
 6       the deposition and come back.  You chose
 7       to go forward.
 8            So we've now been here for five and
 9       a half hours approximately, approaching
10       five and a half hours of deposition.
11       This is the first I'm hearing of it,
12       despite the fact that -- of her need for
13       the translator, despite the fact that
14       we've taken multiple breaks this
15       morning.
16            I disagree with your
17       characterization of her testimony.  What
18       I believe is happening is you don't like
19       or she doesn't like the answers that
20       she's given.
21            And I've asked her if she's
22       understood the questions.  I've
23       explained to her multiple times if she
24       doesn't understand that, to let me know,
25       and she hasn't.
```

```
 1                        Shi
 2          A.    English.
 3          Q.    In English.
 4                And you're able to conduct business
 5      in the United States in English, correct?
 6          A.    Yes.
 7          Q.    And I don't know if you're aware,
 8      but we asked whether a translator was needed
 9      for your deposition, prior to your
10      deposition.  Were you aware of that?
11          A.    Yes.
12          Q.    And the response that we got was
13      that no translator was needed for your
14      deposition.  Is that what you told your
15      attorney?
16          A.    Yes.
17          Q.    Okay.  The -- without marking them
18      as exhibits, you answered a number of
19      interrogatories and verified the correctness
20      of the answers to those interrogatories; is
21      that correct?
22          A.    Yes.
23          Q.    All those interrogatories are
24      written in English; is that correct?
25          A.    Yes.
```

```
1                          Shi
2          A.    Yes.
3          Q.    And it's your testimony now here
4    today that you're unable to proceed in
5    English despite all the facts that I just
6    laid out.
7          A.    No.
8          Q.    You can proceed in English today.
9          A.    Yeah.
10               Well, I don't understand the way of
11   you asking questions.
12         Q.    Okay.  The question to you now is
13   can you proceed in English today, or not.
14         A.    Yes.
15               MR. McKEY:  What do you want to do?
16         Take a break?  Talk to her?
17               MS. SHIELDS:  It's not that I don't
18         like her answers to questions, but she
19         misunderstands some of your verbs, for
20         instance are you prepared to testify to
21         X today.
22               MR. McKEY:  I know you didn't like
23         that answer, but we went back -- I asked
24         that same question about every item that
25         was articulated on that 30(b)(6) Notice.
```

```
 1                      Shi
 2          She answered yes to the majority of
 3          them, and no to certain of them.  That
 4          to me shows that she understands the
 5          distinction between yes and no and
 6          whether she's prepared to answer them or
 7          not.  I followed up on a couple of them
 8          where she indicated that she was not
 9          prepared, and she reiterated that she
10          was not prepared.
11               Now, I am -- listen, if you're
12          saying that she can't go forward, the
13          main thing that we want in this case is
14          a correct record.  I'm not trying to get
15          a record that does not reflect the facts
16          and doesn't reflect the truth, but
17          that's what I'm after, is the truth.  So
18          if she needs time to go back and compose
19          herself, because what happened with her
20          grandfather is -- or great-grandfather
21          -- my apologies -- is a completely
22          different issue, and I -- I was the one
23          who raised that this morning with you,
24          as to whether she was able to go
25          forward.  I was willing five and a half
```

```
 1                        Shi
 2          hours ago to suspend the deposition.  I
 3          think it's unfortunate that apparently
 4          five and a half hours later we're
 5          looking for a Mulligan.  That's my
 6          concern right here.
 7                Now, what I will say is she just
 8          testified that she may be able to go
 9          forward in English.  Maybe she doesn't
10          understand that question.  So what I
11          suggest is that we take another break,
12          you guys go get your story straight, and
13          come back and tell me whether we're
14          moving forward or not.
15                MS. SHIELDS:  We can do that.
16                I'm trying to get a record that's
17          useful to you, and that requires --
18                MR. McKEY:  The record that I've
19          created is useful to me and I think it's
20          detrimental to you, and I think that's
21          why we're seeing this right now.
22                MS. SHIELDS:  No.
23                MR. McKEY:  Now, you and I can
24          debate this, which is really not going
25          to set the ultimate issue today.
```

1                          Shi

2              disagree with your characterization of

3              what happened here.  If she had a

4              problem with certain questions, she

5              certainly was capable of and did in fact

6              ask for them to be rephrased or

7              repeated.  Those are the questions that

8              I would contend she didn't understand.

9              Those that she answered, because she

10             didn't say she didn't understand them, I

11             would contend and the record will

12             reflect that she understood what was

13             going on.

14                  So you and I don't need to debate

15             our respective positions.  I understand

16             what you're saying.  I disagree with it,

17             and we'll see where we end up from

18             there.

19                  So what I will say is this.  Based

20             on your representation, we are going to

21             have to suspend the deposition; we're

22             going to have a meet-and-confer as to

23             the scope of the deposition, whether

24             she's the appropriate witness to act as

25             a 30(b)(6), which she's clearly not; and

```
 1                    Shi
 2          what we are going to do going forward,
 3          and how the costs of today are going to
 4          be borne.
 5              Because I did give her an
 6          opportunity to this morning to back out
 7          of this due to the death in the family,
 8          but sitting here at 2:30 in the
 9          afternoon, looking back on testimony
10          that I had no doubt you consider hurtful
11          to her case, and now raising these
12          issues is of little value or merit to
13          me.
14              So you put your position on the
15          record.  I put my position on the
16          record.  Let's suspend the deposition.
17              When are you available for a meet
18          and confer on this issue?
19              MS. SHIELDS:  Tuesday.
20              MR. McKEY:  Okay.  Why don't you
21          send me an email with the times, and
22          I'll try to fit it in.
23              All right. Deposition suspended.
24              THE VIDEOGRAPHER:  This will end
25          videotape number three of the deposition
```