IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COACH, INC. and COACH SERVICES, INC.,

                Plaintiffs,

        v.

DI DA IMPORT AND EXPORT INC. (D/B/A DI DA NEW YORK),

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 13-cv-7165

Honorable Samuel Der-Yeghiayan

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER RESTRICTING DEFENDANT DI DA IMPORT AND EXPORT INC. FROM TRANSFERRING ASSETS AND MEMORANDUM IN SUPPORT**

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach"), by and through their attorneys, Bryan Cave LLP, move for a Temporary Restraining Order Restricting Defendant Di Da Import and Export Inc. d/b/a Di Da New York ("Defendant") from Transferring Assets. In support of its Motion, Coach states as follows:

**INTRODUCTION**

Coach has asserted claims against Defendant for trademark infringement, false designation of origin, and unfair competition under federal and Illinois common law. Coach seeks not an asset freeze *per se*, but an order for relief prohibiting transfers outside the scope of Defendant's ordinary course of business without further Court approval.

As alleged in Coach's complaint, Defendant is promoting, advertising, distributing, offering for sale, and selling products that infringe on Coach trademarks. These products include wallets, purses, duffle bags, and accessories which bear marks virtually identical to Coach's trademarks without Coach's consent. Defendant's products are offered through a fully-

277911                                        1

interactive commercial Internet website hosted at http://www.didanewyork.com and through at least one third-party vendor store located in Chicago, Illinois.

Defendant has caused and will continue to cause irreparable injury to Coach. Defendant deceives the public by trading upon Coach's reputation and goodwill by using an interactive website and third-party vendors to sell and/or offer for sale products featuring marks that infringe on Coach's trademarks. Defendant has made substantial profits from the sale of these infringing products. Because Defendant should not be permitted to continue and/or profit from its unlawful activities, Coach respectfully requests this Court to issue an order temporarily restricting the transfer of Defendant's assets to preserve Coach's rights to an equitable accounting.

## RELEVANT FACTS

This action arises from Defendant's pervasive sale of goods that infringe on Coach's trademarks. Defendant has an extended history of this willful conduct. As early as 2011, Defendant began infringing on Coach's trademarks. Specifically, Defendant attempted to register certain trademarks with the United States Patent and Trademark Office ("USPTO") which Coach opposed because the marks Defendant sought to register were confusingly similar to Coach's registered trademarks. The USPTO ultimately refused to register Defendant's marks. *See* Notice of Opposition and Decision to Refuse to Register attached hereto as **Group Exhibit 1**.

In early 2013, after learning of Defendant's sales of products bearing marks infringing on Coach's trademarks, Coach delivered a letter notifying Defendant of its infringing activity and violation of both federal and state laws, and demanding that all sales of products infringing on Coach's trademarks immediately cease and desist. *See* Cease and Desist Demand Letter attached hereto as **Exhibit 2**.

In October 2013, Defendant then advertised for sale on its website products which bore logos and source-identifying indicia and design elements that were studied imitations of the Coach trademarks. *See* Complaint, ¶ 27, Exhibits A and B thereto. Defendant's product catalogue also contained at least forty (40) different styles of bags that bore logos and source-identifying indicia and design elements that were studied imitations of the Coach trademarks. *See* excerpts of Defendant's catalogue attached hereto as **Exhibit 3**.

Furthermore, in discussions with counsel for Defendant, it has been made clear that Defendant has little respect for the judicial system or laws related to maintaining corporate formalities. Specifically, Defendant's counsel has represented to Coach's counsel that Defendant may very well run off to China in an attempt to avoid litigation and potential liability. *See* July 11, 2014 Correspondence from Donald Cole to Carolyn Shields, attached hereto as **Exhibit 4**. Although in follow-up correspondence Defendant's counsel stated that she did not "recall" making such representations, Ms. Shields did not affirmatively deny that she made them. *See id.* In fact, Defendant's counsel expressed that in her view it is "the Chinese-American practice of doing that [disappearing to China]" in order to frustrate the legal process by forcing "American judgment creditors [Coach] to start over in China because Chinese courts do not give full faith to US judgments." *Id.* Coach seeks not an asset freeze *per se*, but an order for relief prohibiting transfers outside the scope of the ordinary course of business without further Court approval.

Such relief is warranted not only because of the veiled threats that Defendant may abscond to China in order to force Coach "to start over in China," but also in light of testimony from Defendant's corporate representatives during the attempted prosecution of Defendant's Rule 30(b)(6) deposition. Specifically, despite claiming assets of more than $45,000 and

$230,000 in 2011 and 2012, respectively, Defendant claims that "there's almost zero balance in the [company's banking] account." Deposition of Amy Shi ("Shi Dep.") 75:23-76:22. (A copy of excerpts of Shi Deposition is attached as **Exhibit 5**.) The power to access and transfer company funds and assets, however, appears to be vested indiscriminately. Deposition of Hong Zhu ("Hong Dep.") 58:5-60:11; 94:6-95:8. (A copy of excerpts of Hong Deposition is attached as **Exhibit 6**); Deposition of Sam Zhu ("Sam Dep.") 72:10-16; 161:25-165:4; 173:8-19. (A copy of excerpts of Sam Deposition is attached as **Exhibit 7**); Shi Dep. 483:9-16; 489:8-491:9; 493:10-25. Further, Defendant apparently routinely wires the company's income back to China, where its president "will be the one who decide[s] this money goes to the freight company or this money goes to the factory." Shi Dep. at 129:6-14; 134:7-135:14. Yet, Defendant's president and owner, who currently lives in China and who is given the authority to make such financial decisions, could not testify as to whether Defendant transferred money via wire to other accounts. Sam Dep. at 165:17-21.

Moreover, Defendant's lack of corporate formality, particularly with regard to Defendant's finances, creates a high likelihood that Defendant will attempt to subvert Coach's ability to enforce a judgment against Defendant. Defendant's tax returns reflect "Loans from Shareholders" despite Defendant's assertion that no money has ever been loaned to the company or that a loan to Defendant was ever repaid. Sam Dep. at 46:7-17; 54:8-14. Nevertheless, Defendant's financial officer could not account for a two hundred thousand dollar loan, which was accepted without terms or documentation. Hong Dep. at 13:12-14; 60:12-61:14; 64:23-65:2. Nor did Defendant "know anything about" a fifty thousand dollar loan listed on Defendant's 2013 tax return. *Id*. at 66:18-67:3. Further, Defendant's president was unaware that the company allegedly incurred two hundred thousand dollars in liability in the year 2012.

Sam Dep. at 56:9-11. Defendant also fails to maintain any coordinated accounting system to capture its sales and revenues and does not provide its own accountants with invoices, balance statements, or profit and loss statements in the preparation of annual tax returns. *Id*. at 78:5-17; 79:22-80:22. Defendant's most knowledgeable representatives could not even attest to whether Defendant has shareholders. *Compare* Hong Dep. at 62:17-64:8; 111:18-112:19 (representing that Defendant does not have any shareholders but also that Defendant issued stock for the first time only recently) *with* Sam Dep. at 40:17-41:17; 45:4-11 (discussing the signature of the stock certificate in October 2014, but also that no consideration for the stock shares was exchanged).

Further, Defendant has consistently disregarded the rules of litigation. Defendant was not instructed not to destroy relevant materials pertaining to the case at hand and has actually disposed of relevant documents. Shi Dep. at 211:8-213:14; 428:4-430:24. In addition, Defendant was not surprised to learn that a computer used by Defendant in its operations had been tampered with. Shi Dep. at 217:5-11. In addition, several of Defendant's verified interrogatory responses have been identified as factually incorrect. Sam Dep. at 220:12-221:2. As such, in light of Defendant's past conduct throughout the course of litigation, Defendant has given no indication that it will respect any post-judgment obligations imposed upon it.

Ultimately, Defendant's conduct amounts to an illegal operation infringing on the intellectual property rights of Coach, and a real and imminent threat exists that Defendant will transfer assets in an attempt to subvert the American legal system. *See* Shi Dep. at 129:6-14; 134:7-135:14. Defendant's purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Coach's reputation and the goodwill symbolized by its trademarks. This Court has the authority to provide the requested relief.

**ARGUMENT**

A.      **Standard for Temporary Restraining Order to Freeze Assets**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank and Trust v. Charter One Fin., Inc.*, No. 01-cv-0905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citing *Frederick Atkins, Inc. v. Carson Pirie Scott & Co., Inc.*, No. 99-cv-7838, 1999 WL 1249342, at *1 (N.D. Ill. Dec. 13, 1999)). A party seeking to obtain an injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Grote v. Sebelius*, 708 F.3d 850, 853 n.2 (7th Cir. 2013); *TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895. Finally, the Court must consider the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what has been deemed "the sliding scale approach," the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiffs' position. *Grote*, 708 F.3d 853 n.2. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *TY, Inc.*, 237 F.3d at 896.

**B.    Coach will Likely Succeed on the Merits**

i.    <u>Coach is Likely to Succeed on its Trademark Infringement Claim.</u>

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need be in his favor. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000); *Grote*, 708 F.3d 853 n.2.  A defendant is liable for trademark infringement under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1).  To prove a *prima facie* case of infringement, Coach must show: (1) its mark is distinctive enough to be worthy of protection; (2) Defendant was not authorized to use Coach's trademarks; and, (3) Defendant's use of Coach's trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendant's products.  *See Neopost Indus. B. V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001)).  Coach satisfies the three elements under the Lanham Act to successfully bring a trademark infringement case.

Coach unarguably meets the first two elements under the Lanham Act for proving a case of infringement.  First, Coach's trademarks are registered with the United States Patent and Trademark Office, the majority having been used continuously since 1957 by Coach and its predecessors in interest.  As such, Coach is entitled to a presumption that its trademarks are valid.  *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).  Second, Coach has never licensed nor given Defendant the right to use any of its trademarks.  Coach's filings with the USPTO in opposition to Defendant's trademark applications further support this factor weighing in Coach's favor.

Coach also satisfies the third element required under the Lanham Act - likelihood of confusion. The Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendants to palm off his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *Eli Lilly & Co.*, 233 F.3d at 461. These factors, however, are not a mechanical checklist, and "[t]he proper weight given to each . . . will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are particularly important. *AutoZone, Inc.*, 543 F.3d at 929; *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

Here, Coach clearly satisfies the likelihood of confusion test. The Defendant is selling versions of products that are virtually identical to Coach's products and use marks almost identical to Coach's Trademarks. Coach's trademarks have been used for more than thirty years and have been infamously associated with high-quality purses and handbags, amongst other products. Coach's CC Design, or Signature "C" Trademarks have become widely recognized by the public and trade throughout the United States and world through long use, extensive sales, and significant advertising and promotional activities. Defendant sells products, namely handbags and purses, that look virtually identical to the aforementioned products that Coach sells. Shown by the set of images below, Defendant uses marks on its products that are virtually identical to Coach's Signature C Trademarks that Coach uses on its high-quality goods:

| Coach's 'Signature C' Trademark | Defendant's Infringing Mark |
|---|---|
|  | |

Defendant is intentionally using a mark that looks virtually identical to Coach's trademark in order to confuse and deceive the consuming public into thinking that Defendant's products are in fact manufactured by or emanate from Coach. Defendant is purposely attempting to benefit and trade off of Coach's goodwill and reputation. *See also* Group Ex. 1. As such, the first and second factors weigh heavily in favor of Coach.

Coach also satisfies the third factor - area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id.* Here, both Coach and Defendant advertise and sell their products to consumers over the Internet and through brick and mortar locations. Thus, because Defendant targets the same consumers by the same means Coach does, this factor weighs heavily in favor of Coach.

Regarding the fourth factor, degree of consumer care, the consumer base here is a diverse group of people including children and adults, men and women. "[W]hen a buyer class is mixed,

277911    9

the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001); *see also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir. 1991) (the sophisticated consumer is more likely to assume presence of well-known mark means an association with the manufacturer). Taking into account the diverse group of Coach's consumers, this factor also favors Coach.

Coach's Signature C Trademarks have been used for more than 10 years and have become famous and associated with purses and handbags, amongst other products, and is distinctive when applied to high-quality merchandise. They signify to consumers that the products come from Coach and are manufactured to the highest quality standard. Consumers have come to recognize the Coach brand as a source of premium purses and handbags. *See AutoZone, Inc.*, 543 F.3d at 933 ("The stronger the mark, the more likely it is that encroachment on it will produce confusion."). Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Coach.

As for the sixth factor, Coach does not yet have evidence of actual consumer confusion, but that is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Coach or Coach-related products. *See CAE, Inc.*, 267 F.3d at 685.

Finally, the seventh and final factor – intent of Defendant to "palm off" its product as that of Coach's – also weighs heavily in Coach's favor. Specifically, despite Defendant being put on notice through both Coach's oppositions to its trademark registration applications and Coach's cease and desist letter regarding its infringing conduct, Defendant continued the sale and offering for sale of its products with marks infringing on Coach's Signature C Trademarks. *See*

*AutoZone, Inc.*, 543 F.3d at 934 ("[defendant's] argument, however, fails to take into account all the evidence in the record bearing on [his] knowledge of AutoZone's mark and his intent to create a mark confusingly similar to it."). The similarities between the marks and the identical nature of the use of Defendant's marks are all evidence of Defendant's intent to "palm off" of Coach and its Signature C Trademarks, further creating a likelihood of confusion.

Taking the evidence as a whole, Coach is likely to establish a *prima facie* case of trademark infringement and false designation of origin under the Lanham Act.

  ii. <u>Coach is Likely to Succeed on its False Designation of Origin Claim.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and, (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 865 (C.D. Ill. 2013) (citing *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for bringing a trademark infringement claim under the Lanham Act. *See Neopost Indus. B. V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Because Coach's Signature C Trademarks are registered marks and Coach has established the merits of likelihood of confusion in its trademark infringement claim against Defendant, *supra*, a likelihood of success on the merits for Coach's false designation of origin claim is also established.

  iii. <u>Coach is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act Claim.</u>

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citing *Thompson v. Spring-Green Lawn Care*

*Corp.*, 466 N.E.2d 1004, 1009-1010 (Ill. App. Ct. 1984)). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act statute. *Am. Broad. Co. v. Maljack Prod., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Coach has established the merits of likelihood of confusion in its trademark infringement claim against Defendant, *supra*, and the standard is the same under Illinois law, Coach has also established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

C.     **There Is No Adequate Remedy At Law And Coach Is Likely To Suffer Irreparable Harm In The Absence Of An Order Freezing Assets**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001); *see also Eli Lilly*, 233 F.3d at 468 (citing *Abbott Labs.*, 971 F.2d at 16) (acknowledging that "irreparable harm is generally presumed in cases of trademark infringement"); *Dunkin Donuts Franchised Rest. LLC v. Elkhatib*, No. 09-cv-1912, 2009 WL 2192753, at *4 (N.D. Ill. July 17, 2009) (irreparable harm and inadequate remedy at law are presumed in trademark cases). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Int'l Kennel Club of Chicago, Inc. v. Might Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988); *see also* 4 CALLMAN, *Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970)).

Remedies against Defendant will be ineffective if all of Defendant's corporate assets are looted, dissipated or become otherwise untraceable following Defendant's continued web of questionable transactions. Indeed, the very purpose of the order Coach seeks is to prevent any equitable award in this case, including an award of statutory damages under the provisions of the

Lanham Act from becoming meaningless. If the assets are not preserved, then Coach may never recover on equitable remedies awarded by the Court.

### D. The Balancing of Harm Tips in Coach's Favor

As noted above, if the Court is satisfied that Coach has demonstrated: (1) a likelihood of success on the merits; (2) no adequate remedy at law; and, (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Coach will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895. As a willful infringer, Defendant is entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (citation omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Coach has demonstrated, Defendant has been profiting from the sale of products infringing on Coach's Signature C Trademarks. Thus, the balance of equities tips decisively in Coach's favor.

### E. The Equitable Relief Sought Is Appropriate

An order preventing the transfer of assets is appropriate so that Coach's right to an equitable accounting of Defendant's profits from sales of infringing products is not impaired. Issuing an order will ensure Defendant's compliance. If such an order is not issued in this case, Defendant can simply disregard its responsibilities and transfer financial assets to overseas

accounts before judgment in Coach's favor is granted. Specifically, upon information and belief, the Defendant in this case hold most of its assets in China, making it easy to hide or dispose of assets, which will render an accounting by Coach meaningless. *See, e.g.*, Shi Dep. 129:6-14; 134:7-135:14.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Coach has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117, Coach is entitled, "subject to the principles of equity, to recover . . . defendant's profits." Coach's Complaint seeks, among other relief, that Defendant account for and pay to Coach all profits realized by Defendant by reason of Defendant's unlawful acts. Therefore, this Court has the inherent equitable authority to grant Coach's request for a prejudgment asset freeze to preserve relief sought by Coach.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, No. 03-cv-4844, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the

Court found that it had the authority to freeze the storeowner's assets. *Id.*; *see also CSC Holdings, Inc.*, 309 F.3d at 996 ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd.*, 970 F.2d at 559; *accord* 5 J. THOMAS MCCARTHY, *McCarthy on Trademarks and Unfair Competition*§ 30:40 (4th ed. 2013).

Coach has shown a strong likelihood of succeeding on the merits, an immediate and irreparable harm suffered as a result of Defendant's activities, and that, unless Defendant's assets are frozen, Defendant will likely hide or move its ill-gotten funds to offshore bank accounts. Coach requests the relief set forth in the motion, which is limited to prohibiting the Defendant from transferring or otherwise encumbering assets. Defendant would be free to operate its business, as usual, including paying all bills and salaries. Defendant would have to seek court approval before any transfer or encumbrance could be completed, and before any dividends, distributions, advances, or loans are paid. Finally, Coach seeks the immediate identification of all bank accounts, interest in real property and any other asset owned by Defendant so that Coach and this Court can obtain documents necessary to determine whether a violation has occurred. Accordingly, it is respectfully submitted that the granting of an injunction preventing the transfer of Defendant's assets outside of the normal course of business is proper.

## CONCLUSION

For the foregoing reasons, Coach respectfully requests this that Court: (1) grant its Motion in its entirety; (2) enter a temporary restraining order freezing Defendant Di Da Import and Export Inc. d/b/a Di Da New York's assets prohibiting Defendant from transferring any assets outside the normal course of its business and requiring Defendant to seek court approval before any transfer or encumbrance could be completed, and before any dividends, distributions,

advances, or loans are paid; and, (3) order Defendant to produce, within five (5) days, the immediate identification of all bank accounts, interest in real property, and any other assets owned by Defendant, thereby allowing this Court to obtain documents necessary in determining whether a violation has occurred.

Dated: December 19, 2014

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ S. Patrick McKey
S. Patrick McKey, #6201588
Donald A. Cole, #6299318
Lauren J. Caisman, # 6312465
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Fax: (312) 602-5050
patrick.mckey@bryancave.com
donald.cole@bryancave.com
lauren.caisman@bryancave.com
*Attorneys for Coach, Inc. and Coach Services, Inc.*

277911

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 19th day of December 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Defendant Di Da Import and Export Inc. through its counsel of record.

                Respectfully submitted,

                <u>   /s/ S. Patrick McKey</u>
                S. Patrick McKey