**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 13-cv-7165 ) ) Judge Der-Yeghiayan |
| v. | ) ) |
| DI DA IMPORT AND EXPORT INC. d/b/a DI DA NEW YORK, | ) ) DEFENDANT'S MEMORANDUM ) OF LAW OPPOSING PLAINTIFFS' |
| Defendant. | ) MOTION FOR LEAVE TO FILE A ) FIRST AMENDED COMPLAINT; ) DECLARATIONS OF SAM ZHU, ) LONG ZHU, AMY SHI, HONG ZHU, ) AND CAROLYN SHIELDS ) ) ) |
| _____ | ) |

Defendant DI DA Import and Export Inc. d/b/a DI DA New York ("DI DA") opposes plaintiffs' motion for leave to file a First Amended Complaint on the following grounds:

1. Plaintiffs have not shown good cause under Rule 16 to amend the complaint;

2. Amendment of the complaint would be futile because it would not withstand the individuals' prospective motion to dismiss for lack of personal jurisdiction;

3. The proposed Alter Ego cause of action fails to state a claim because it is not a cause of action under applicable law;

4. Plaintiffs' motion is not supported by substantial evidence;

5. Both the corporate defendant and the individuals would be prejudiced.

//

//

1

**MEMORANDUM OF LAW**

**A.   Plaintiffs must show good cause for their proposed amendments under Rule 16, Fed. R. Civ. P.**

Whether to grant leave to amend should be judged under Rule 16's good cause standard, not Rule 15's freely granted standard: "To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.' Fed. R. Civ. P. 16(b). As our sister circuit succinctly stated, 'Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment.'" Trustmark Ins. Co. v. General & Cologne Life Re of Am., 424 F.3d 542, 553 (7th Cir. 2005). Good cause requires an analysis of the following factors:  (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice.  3-16 Moore's Federal Practice - Civil § 16.14.

"[A]n additional burden is imposed when leave to amend is sought after discovery has been completed [and in that case, after a motion for summary judgment had been filed] . . . .  In such cases, it is clearly established that 'the proposed amendment must be not only theoretically viable but also solidly grounded in the record.'" Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013).  "[A]n amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence." Id. Plaintiffs' motion papers do not provide substantial evidence for amending the complaint for reasons discussed below.

Even under Rule 15, however, leave should not be granted when it would be futile: "While Rule 15(a) states that 'leave shall be freely given when justice so requires,' the court should not allow the plaintiff to amend his complaint when to do so would be futile." Moore v.

Indiana, 999 F.2d 1125, 1128 (7th Cir. 1993). Here, allowing amendment of the complaint would be futile because it would not withstand a motion to dismiss for lack of personal jurisdiction over the individuals and a motion to dismiss for failure to state a claim.

B. **Plaintiffs seek leave to amend their complaint not only to add new individual defendants but to inject new allegedly infringed trademarks into this case.**

Plaintiffs' motion papers do not mention that plaintiffs' proposed amended complaint also adds, in paragraph 16, 14 trademarks that did not appear in the original complaint:

4,105,689; 4,168,626; 3,413,536; 4,296,584; 4,365,898; 4,365,899; 4,105,636; 4,391,741; 4,296,582; 4,359,191; 4,334,351; 3,685,590; 3,908,558; 3,812,170

Plaintiffs' motion papers do not mention the addition of these alleged trademarks or show good cause for asking to amend the complaint to add them after discovery has closed. See Rule 16, Fed. R. Civ. P.

Defendant's opposition to plaintiffs' motion for a restraining order shows, through plaintiffs' interrogatory responses, the two marks by defendants which plaintiffs claim infringe plaintiffs' marks, and the eight marks of plaintiffs which plaintiffs claim have been infringed, which do not include any of the above. (Plaintiffs' response to Interrogatory Number 2.)

The addition of 16 allegedly infringed marks after the close of discovery is prejudicial to the named defendants and to the individual persons plaintiffs seek leave to join.

C. **Joinder of the individuals would be futile because their motion to dismiss the amended complaint for lack of personal jurisdiction would likely be successful.**

Leave to amend a complaint should be denied when it would be futile:

> The plaintiff's efforts to amend his complaint were futile because the Eleventh Amendment bars the damages claims against both the actual and the putative defendants in their official capacities, the statute of limitations bars the claims against the putative defendants in their individual capacities, and the proposed amended complaint failed to state a claim against Superintendent Richards in his individual capacity. Accordingly, we AFFIRM the district court's denial of the motion to amend . . . .

3

Moore v Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993). In the present case amendment would be futile because the individuals would likely prevail on a motion to dismiss for lack of personal jurisdiction.

Personal jurisdiction over the putative alter ego is required for a court to adjudicate the alter ego issue: "The Court of Appeals was quite right in vacating the judgments against Hazeltine. The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. . . . Perhaps Zenith could have proved and the trial court might have found that HRI and Hazeltine were alter egos; but absent jurisdiction over Hazeltine, that determination would bind only HRI." Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 110, 111 (1969).

**D.  This Court would lack personal jurisdiction over the individuals plaintiffs seek leave to join.**

**1.  Choice of Law**

In a federal question case, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. The Lanham Act does not authorize nationwide service of process. Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution, as to which courts have found no difference. See Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); Hyatt International Corp. v. Coco, 302 F.3d 707, 715 (7th Cir.2002).

Under the requirements for personal jurisdiction, this Court lacks personal jurisdiction over the four individuals: "In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process. . . . Because the Lanham Act

4

does not provide for national service of process, Utah's long-arm statute governs this inquiry." Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc., 2005 U.S. Dist. LEXIS 46660, 13, 2005 WL 3263157 (D. Utah 2005). "To determine personal jurisdiction over a non-domiciliary in a federal question case, this Court applies the long-arm statute of the forum state." Hubbell Inc. v. Pass & Seymour, 883 F. Supp. 955, 961 (S.D.N.Y. 1995). "The Lanham Act does not permit the exercise of personal jurisdiction based on a defendant's contacts with the United States as a whole. . . . . If a defendant may not be forced to defend against Lanham Act claims in a forum state in which personal jurisdiction is lacking, it would fairly appear that the pertinent forum for purposes of forum non conveniens is the state of filing and not effectively any court in the United States." Royal Gist-Brocades N.V. v. Sierra Prods., Ltd., 1999 U.S. Dist. LEXIS 12414, 30-31 (E.D. Pa. 1999).

    2.  **There is neither general nor specific personal jurisdiction over the individuals.**

As shown by the declarations of Sam Zhu, Long Zhu, Hong Zhu, and Amy Shi, none of them has ever been in the state of Illinois and none of them has had any contacts with Illinois, and therefore not continuous and systematic contacts. Thus, there is not general personal jurisdiction over them.

None of the four individuals has had any contacts with Illinois. None of them has had any mail or wire communications with the state of Illinois; conducted any business in or directed at the state of Illinois; engaged in any transaction in the state of Illinois; engaged in any conduct directed at Illinois; availed themselves of the privilege of conducting business in Illinois; entered into any contracts in the state of Illinois; or taken any action expressly aimed at the state of Illinois. Thus, there is not specific personal jurisdiction over them.

Sam Zhu, president and sole shareholder of DI DA, is domiciled in Guangzhou, in the People's Republic of China. His father, Long Zhu, is a permanent resident alien of the United States and lives part-time in Guangzhou, China, and part-time in the state of New York. Amy Shi and Hong Zhu are domiciled in the state of New York. None of them ever expected to be defendants in a lawsuit brought in Illinois.

**E.     This Court lacks personal jurisdiction over the corporation.**

This is not the usual case where individuals are sought to be held liable for the corporation's debt. In this case, there is also no personal jurisdiction over the corporation. This point was discussed in defendants' opposition to plaintiffs' motion for a restraining order and will be the subject of defendant's motion to dismiss or for summary judgment.

**1.     There is no general personal jurisdiction over the corporation.**

"[T]he inquiry under Goodyear is . . . 'whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014). *See also* Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

> In determining whether general jurisdiction exists, courts examine the following factors: (1) whether defendants maintain offices or employees in Illinois; (2) whether defendants send agents into Illinois to conduct business; (3) whether defendants have designated an agent for service of process in Illinois; (4) whether defendants advertise or solicit business in Illinois; and (5) the extent to which defendants conduct business in Illinois.

Richter v. Instar Enters. Int'l, Inc., 594 F. Supp. 2d 1000, 1006 (N.D. Ill. 2009).

The second Shi Declaration (para. 2) shows that there is no general personal jurisdiction based on the foregoing factors.

//

//

**2. There is no specific personal jurisdiction over the corporation.**

"Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . . In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

**3. The corporation's website does not provide specific personal jurisdiction.**

The second Shi Declaration and exhibits show that DI DA's website does not create personal jurisdiction. The website is passive; it displays information about DI DA's products; no goods can be ordered over the website; no contracts can be entered into over the website; business cannot be not transacted over the website. The website does have an email function, but goods cannot be ordered through this email function.

The Court of Appeals for the Seventh Circuit has held 'that a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there. Thus, the district court in this case concluded correctly that AC Hydraulic's maintenance of a passive website did not contribute to Jennings's effort to establish specific jurisdiction in Indiana.'" Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004).

DI DA did not have the additional voluntary contacts with the state of Illinois that, when added to a website, would create specific personal jurisdiction. Illinois v. Hemi Grp. LLC, 622 F.3d 754, 760 (7th Cir. 2010).

Nor did DI DA target the Illinois market: "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir. 2011). In short, a website, even an interactive website, is not enough. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 803 (7th Cir. 2014).

Even if the email function of the website were considered, it is unilateral—it is a one-way communication from the user to DI DA, with DI DA replying to the user's email address, not through the website. Such unilateral activity of the user does not and should not create personal jurisdiction: The unilateral activity of another party cannot establish defendant's contact with the forum state. Richter v. Instar Enters. Int'l, Inc., 594 F. Supp. 2d 1000, 1014 (N.D. Ill. 2009). "A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction". Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F. Supp. 2d 824, 838 (N.D. Ill. 2000).

**F.      Sam Zhu is the sole shareholder of DI DA.**

Though there is no basis for piercing DI DA's corporate veil to get at DI DA's shareholder, even if there were, the sole shareholder is Sam Zhu. Long Zhu, Hong Zhu, and Amy Zhu are not shareholders of DI DA. "A non-shareholder is not liable for the corporation's debts on an alter ego theory." Wm. Passalacqua Bldrs. V. Resnick Devs. S., 933 F.2d 131, 138 (2d Cir 1991).

//

//

//

8

**G.     Alter Ego is not a cause of action and therefore fails to state a claim.**

**1.     Choice of law**

Illinois law was applied in <u>Fieldturf Int'l, Inc. v. Triexe Mgmt. Group Inc</u>., 2004 U.S. Dist. LEXIS 6676, 14, 2004 WL 866494 (N.D. Ill. Apr. 14, 2004), without the court's deciding whose law should apply to an alter ego claim.

The U.S. District Court for the Eastern District of Washington applied federal common law to decide whether to pierce the corporate veil. <u>OTR Wheel Eng'g, Inc. v. West Worldwide Servs</u>., 2014 U.S. Dist. LEXIS 106004, 4 (E.D. Wash. 2014) ("Because subject matter jurisdiction in this case is based on a federal question arising from Plaintiffs' trademark infringement claims under the Lanham Act, 15 U.S.C. §1051 et. seq., federal common law controls whether to 'pierce the corporate veil.'").

The Second Circuit Court of appeals applied the law of the state of incorporation, which in this case would be the law of New York:

> The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders: "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.". . .  See also RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation. . . and to its creditors for corporate debts."). Accordingly, the law of Texas applies to Appellant's alter ego claim.

<u>Kalb, Voorhis & Co. v. Am. Fin. Corp</u>., 8 F.3d 130, 132-33 (2d Cir. 1993). *See also* <u>Phillips v Reed Group, Ltd</u>., 955 F. Supp. 2d 201, 227-28 (S.D.N.Y. 2011) ("Under New York choice-of-law rules, the law of the state of incorporation is used to determine whether the corporate veil should be pierced").

//

**2.	Under applicable law, piercing the corporate veil is not a cause of action.**

The proposed amended complaint contains a cause of action for piercing the corporate veil of the corporation. "The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation . . . . The concept is equitable in nature and <u>assumes that the corporation itself is liable</u> for the obligation sought to be imposed . . . . Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners . . . ." <u>Morris v. State Dep't of Taxation & Fin.</u>, 82 N.Y.2d 135, 140-141 (1993) (emphasis added). *See also* <u>Peacock v Thomas</u>, 516 US 349, 353-54 (1996) ("Piercing the corporate veil is not itself an independent ERISA cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'").

"Piercing of the corporate veil is not a cause of action independent of that against the corporation; it is established when the facts and circumstances compel a court to impose the corporate obligation on its owners, who are otherwise shielded from liability . . . . <u>Tap Holdings, LLC v. Orix Fin. Corp.</u>, 109 AD3d 167, 174 (1st Dep't 2013). "New York law simply does not recognize the doctrine of 'piercing the corporate veil' as an independent cause of action." <u>Comm'r of the State Ins. Fund v. Grosman</u>, 2011 NY Slip Op 31282[U], *5 (Sup. Ct., NY County 2011). Such a cause of action should be dismissed under New York law: "[T]he Supreme Court should have directed the dismissal of the tenth cause of action in the complaint in Action No. 2, which alleged liability under a theory of piercing the corporate veil, since 'New

York does not recognize a separate cause of action to pierce the corporate veil'" . . . . Gaetano Dev. Corp. v. Lee, 121 A.D.3d 838, 840 (2d Dep't 2014).

**H.    Both the corporate defendants and the individuals would be prejudiced if leave to amend were granted.**

"An amendment is prejudicial to the non-moving party if it 'would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute.'" Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 736 (S.D.N.Y. 2011). Similarly, "In gauging prejudice, we consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.' . . . Undue prejudice arises when an "amendment [comes] on the eve of trial and would result in new problems of proof." Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008). It is unquestioned that both the individuals and the corporation would incur significant additional expense and burdens if the individuals were joined as parties.

**I.    Plaintiffs' motion is brought for an improper purpose.**

Plaintiffs make repeated misrepresentations to the Court about the evidence in this case. Defendants do not divine plaintiffs' purpose but believe it cannot be obtaining a remedy from the individuals they seek to join. None of the individuals would be able to satisfy a judgment, and any U.S. judgment would not be given full faith and credit by China even if the individuals in China did have assets, because China is not a signatory to the Convention on the Enforcement of Foreign Judgments.

The following statements in Plaintiffs' Memorandum are unsupported by any declaration sworn to under penalty of perjury or other evidence:

11

1.     Plaintiffs' Memorandum (page 8) states that "Di Da lacks records of purchase orders or related paperwork when purchasing goods from its manufacturers, lacks records of customer claims, complaints, concerns, or refunds . . . ." Plaintiffs' attorneys have in their possession the exact documents which they now state DI DA lacks. In discovery, DI DA produced: records of purchase orders, invoices, and packing lists showing goods purchased from its manufacturers (Bates Numbers DD1865-DD1874); communications with customers including complaints and concerns (Bates Number DD3670-DD3697). (Shi Declaration; Shields Declaration.) Defendant may not have its records in a full text searchable database, but it has them and produced them.

2.     Plaintiffs' Memorandum (page 6) states that defendant "failed to respect defendant's corporate form. (See Shi Declaration.)

3.     Plaintiffs' Memorandum (pages 6-7) states that defendants commingled corporate and personal funds. With all the financial records and bank records which defendants produced to Plaintiffs in discovery, Plaintiffs could find nothing among them to support this unsupported claim of commingling. Instead, they argue that the source of Long Zhu's funds, contributed to DI DA and used by DI DA to rent and renovate a showroom and warehouse and to make a down payment on its first order of goods, was a commingling. (Shi Declaration.)

4.     Plaintiffs' Memorandum (page 7) states that not all of DI DA's officers and directors know what DI DA's corporate format is. But page 26, lines 16-18, of the transcript of Amy Shi's testimony shows the following question and answer:

```
16            4.   Q.   Do you know what type of
17            corporation Di Da is?
18                 A.   Incorporation.
```

Despite the witness' having answered the question, Coach's attorney went on to ask whether she knew if DI DA was a partnership, or a limited liability company, and what she did to determine whether DI DA had any partners. Shortly afterwards, the witness was unable to distinguish between a question in the form: "Did you do anything to prepare on this topic?"; and a question in the form: "Are you prepared to testify on this topic?". DI DA's attorney, believing that the witness did not understand the words and sense of the English language questions, terminated Ms. Shi's testimony until a Mandarin interpreter could be obtained. On a later date, with an interpreter, the witness better understood the questions. (Shields Declaration.)

5. Plaintiffs' Memorandum (page 7) claims that no consideration was exchanged for the shares issued to Sam Zhu. But the deposition testimony shows that consideration was provided by Long Zhu's contribution or by Sam Zhu's own work for DI DA. New York Business Corporation Law § 504(a) provides that consideration for shares can include work provided by a shareholder for the corporation for its benefit or in its formation. Deposition testimony of DI DA's designees shows that Sam Zhu incorporated DI DA and did the work relating to applying for and registering trademarks.

6. Plaintiffs' Memorandum (page 7) states that DI DA does not maintain a registered agent or a corporate secretary. Neither is required under New York law. By statute, New York Business Corporation Law ("BCL") § 304, the Secretary of State is designated the agent for service of process of a corporation. The records of the New York Secretary of State show the person and address to whom process will be mailed as DI DA's president at DI DA's office. (Shields Declaration.) In addition, the present BCL recognizes the informality of a close corporation, like DI DA:

13

> Under the Business Corporation Law (eff Sept. 1, 1963), the only duties required of either a corporate treasurer or secretary are certain ministerial functions, such as sending or receiving notices and signing certificates. . . .
>
> That statute, reflecting business reality, "broke new ground" in recognizing "the hybrid character and uniqueness of the closely-held enterprise" . . . . Thus, "the formality of corporate management at the board level, characteristic of the publicly-held corporation, is generally neither feasible nor desirable for the close corporation" . . . . What is true at the board level is true of the officers as well, given the flexible form of such enterprises.
>
> Thus, it does not appear that the offices of treasurer and secretary require that plaintiff be assigned particular duties as a matter of law, other than the aforesaid ministerial duties. . . .

Landorf v. Glottstein, 131 Misc. 2d 432 (Sup. Ct., New York County, 1986).

7. Plaintiffs' Memorandum (page 9) states that DI DA does not maintain financial statements, like profit and loss statements, despite Plaintiffs' attorneys having in their possession a profit and loss statement, tax returns, and bank statements produced to them by defendant's attorney. (Shields Declaration.)

8. Plaintiffs' Memorandum (page 9) states that DI DA is undercapitalized without any evidence to support this statement. As shown by Amy Shi's Declaration, DI DA is able to order goods, pay its suppliers, and keep current on its rent and other expenses.

9. Plaintiffs' Memorandum (page 10) states that DI DA does not have any real estate or other property. The documents produced in discovery and the deposition testimony show that DI DA has assets in the form of approximately seven registered trademarks, none of which is the subject of this action, inventory, and good will. (Shi Declaration.)

10. Plaintiffs' Memorandum (page 10) states that DI DA does not have business insurance. DI DA does have workers compensation insurance, as required by New York law. (Shi Declaration.) If DI DA had a typical policy with Commercial General Liability coverage, it

might have provided limited advertising coverage for the claims in this case but with an exclusion for trademark infringement not associated with advertising.

## CONCLUSION

For the reasons discussed herein and in the accompanying declarations, defendant respectfully requests the Court to deny plaintiffs' motion for leave to amend the complaint.


Dated:  January 20, 2015                                    Respectfully submitted,

                                                                                       */s/ Carolyn Shields*
Carolyn Shields
Ying Liu
LIU & SHIELDS LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
shieldscj524@gmail.com

Attorneys for Defendant
DI DA IMPORT AND EXPORT INC.
d/b/a DI DA NEW YORK

Local Counsel:
Brian J. Lum, Esq.
ICE MILLER LLP
200 West Madison Street, Suite 3500
Chicago, IL 60606
312-726-8129
brian.lum@icemiller.com