**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| COACH, INC. and COACH SERVICES, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **Case No. 13-cv-7165** |
| v. | : | |
| | : | **Honorable Samuel Der-Yeghiayan** |
| DI DA IMPORT AND EXPORT INC. d/b/a DI DA | : | |
| NEW YORK, and HONG ZHU, LONG ZHU, AMY | : | |
| SHI, and  SAM ZHU, | : | |
| | : | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANT SAM ZHU'S MOTION TO
DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS AND TO DEFENDANTS
SAM ZHU, LONG ZHU, HONG ZHU, AND AMY SHI'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach"), by and through

their attorneys, Bryan Cave LLP, submit this Combined Response to Defendant Sam Zhu's

Motion to Dismiss for Insufficiency of Service of Process and to Defendants Sam Zhu, Long

Zhu, Hong Zhu, and Amy Shi (collectively, the "Individual Defendants")'s Motion to Dismiss

for Lack of Personal Jurisdiction (together, hereafter referred to as the "Motion" or "Motion to

Dismiss") as follows:

# TABLE OF CONTENTS

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

ARGUMENT ................................................................................................................. 1

I.     DEFENDANT SAM ZHU WAS PROPERLY SERVED. ................................................ 1

II.    THIS COURT HAS PERSONAL JURISDICTION OVER DI DA. ................................. 4

III.   THE INDIVIDUAL DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION
IN ILLINOIS. ........................................................................................................ 6

   A.   Di Da Is The Individual Defendants' Alter Ego. ............................................. 8

      1.   The Individual Defendants have failed to observe the requirements and formalities
of Di Da's separate corporate existence. ................................................. 9

      2.   Di Da is inadequately capitalized. ........................................................ 13

      3.   Di Da and the Individual Defendants comingle personal and corporate funds. ......... 15

      4.   The Individual Defendants exercise control over Di Da such that Di Da is their mere
instrumentality. ................................................................................. 17

   B.   The Individual Defendants Used Di Da To Perpetrate Their Trademark
Infringement. ................................................................................................ 20

   C.   Di Da And The Individual Defendants' Infringing Activities Have Injured  Coach. ... 22

IV.   THE INDIVIDUAL DEFENDANTS' DECLARATIONS SHOULD BE
DISREGARDED. ................................................................................................ 23

CONCLUSION ............................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Chase Home Fin. LLC*,
No. 10 C 8270, 2011 WL 3882814 (N.D. Ill. Sept. 2, 2011)....................................................... 4

*Ameritech Mobile Commc'ns, Inc. v. Cellular Cmmc'ns Corp.*,
664 F. Supp. 1175 (N.D. Ill. 1987) ............................................................................................ 8

*Asahi Metal Indus. Co. v. Super. Ct.*,
480 U.S. 102 (1987) .................................................................................................................. 6

*Bank of Ill. v. Allied Signal Safety Restraint Sys.*,
75 F.3d 1162 (7th Cir. 1996) .................................................................................................. 23

*Cent. States Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .................................................................................................... 7

*Chi. Dist. Council of Carpenters Pension Fund v. Anthony Floor and Wall Covering Co.*,
No. 93 C 7246, 1994 WL 650004 (N.D. Ill. Nov. 16, 1994)................................................. 24

*Chicago Import, Inc. v. American States Ins. Co.*,
No. 09-C-2885, 2010 WL 3385539 (N.D. Ill. Aug. 24, 2010) ................................................. 5

*Cohen v. Ayers*,
449 F. Supp. 298 (N.D. Ill. 1978) .......................................................................................... 24

*Columbus Realty Inv. Corp. v. Wend-Heng Tsiang*,
226 A.D.2d 259 (N.Y. App. Div. 1996) .................................................................................... 3

*Creek v. Vill. of Westhaven*,
144 F.3d 441 (7th Cir. 1998) .................................................................................................... 5

*Dakota Indus., Inc. v. Ever Best Ltd.*,
28 F.3d 910 (8th Cir. 1994) .................................................................................................... 21

*Darwin Nat. Assur. Co. v. Hellyer*,
No. 10 C 50224, 2011 WL 2259801 (N.D. Il. June 7, 2011).................................................... 4

*Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*,
724 F. Supp. 2d 308 (E.D. N.Y. 2010) ......................................................................... 11, 12, 14

*Freeman v. Complex Computing Co., Inc.*,
119 F.3d 1044 (2d Cir. 1997) ......................................................................................... 7, 8, 9

*Fuller v. Midland Credit Mgmt. Inc.*,
No. 11 C 5111, 2014 WL 883757 (N.D. Ill. Mar. 6, 2014) ..................................................... 7

*Gibson, Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply Ltd.*,
280 A.D.2d 360 (N.Y. App. Div. 2001) .................................................................................... 3

*Hubbard v. Certified Grocers Midwest, Inc.*,
No. 02 C 9178, 2004 WL 546902 (N.D. Ill. Mar. 17, 2004) ................................................. 23

*In re Adler, Coleman Clearing Corp.*,
469 F. Supp. 2d 112 (S.D. N.Y. 2007)............................................................................... 11, 12

*In re Montclair Homes*,
200 B.R. 84 (Bankr. E.D. N.Y. 1996)...................................................................................... 11

*Klump v. Duffus*,
71 F.3d 1368 (7th Cir. 1995) .................................................................................................... 6

*L.B. Foster Co. v. Railroad Serv., Inc.*,
734 F. Supp. 818 (N.D. Ill. 1990) ............................................................................................ 6

*Manning v. Sweitzer*,
 891 F. Supp. 2d 961 (N.D. Ill. 2012) ........................................................... 4
*Melton v. Brotman Foot Care Grp.*,
 198 A.D.2d 481 (N.Y. App. Div. 1993) ...................................................... 4
*Milan v. City of Chi.*,
 No. 12 C 5621, 2013 WL 6255013 (N.D. Ill. Dec. 3, 2013) ...................... 23
*Nelsen v. Morris*,
 No. 03 C 7172, 2004 WL 868398 (N.D. Ill. Apr. 22, 2004)....................... 7
*Saylor v. Dyniewski*,
 835 F.2d 341 (7th Cir. 1988) ...................................................................... 24
*The Finance Co. of Am. v. Bankamerica Corp.*,
 493 F. Supp. 895 (D. Md. 1980) ................................................................ 21
*Velez v. Vassallo*,
 203 F. Supp. 2d 312 (S.D. N.Y. 2002)..................................................... 3, 4
*Vid v. Kaufman*,
 282 A.D.2d 739 (N.Y. App. Div. 2001) ..................................................... 4
*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
 674 F.3d 743 (7th Cir. 2012) ...................................................................... 13
*Weiss v. Coca-Cola Bottling Co. of Chicago*,
 No. 91 C 1475, 1992 WL 48018 (N.D. Il. Mar. 3, 1992) ........................... 5
*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)...................................................................................... 6
*YKK USA, Inc. v. Baron*,
 976 F. Supp. 743 (N.D. Ill. 1997) ......................................................... 7, 24

**Statutes**
735 ILCS 5/2-209(a) .......................................................................................... 6
735 ILCS 5/2-209(c).......................................................................................... 6
N.Y. Bus. Corp. § 602(b) ............................................................................... 10
N.Y. Bus. Corp. § 624(a) .......................................................................... 10, 12
N.Y. Bus. Corp. Law § 708(b) ....................................................................... 18
N.Y. Bus. Corp. Law § 715(a) ....................................................................... 18
N.Y. CPLR § 308.............................................................................................. 4
N.Y. CPLR § 308(2) ......................................................................................... 2

**Other Authorities**
Fed. R. Civ. Proc. 4(e) ................................................................................. 2, 4

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2013, Coach filed its Complaint against Defendant Di Da Import and Export Inc. ("Di Da"). Among other claims, the Complaint stated causes of action for trademark infringement and unfair competition under the Lanham Act. During discovery it became clear that the Individual Defendants, who serve as owners, officers, and/or board members of Di Da, exercised such domination and control over Di Da such that they should not be, and are not, able to use Di Da's corporate form to shield themselves from liability for the wrongful acts committed against Coach, as alleged in the Complaint. Coach subsequently sought leave to amend its Complaint to pierce Di Da's corporate veil. (*See* Dkt. No. 29.) Di Da opposed Coach's motion arguing that Coach's proposed First Amended Complaint would be subject to dismissal for lack of personal jurisdiction over the Individual Defendants. (Dkt. No. 32.) Over Di Da's objection, this Court allowed amendment. (Dkt. No. 45.) Moreover, in granting Coach's Motion for Temporary Restraining Order, this Court found that Coach presented sufficient evidence that Di Da is subject to personal jurisdiction in Illinois. (Dkt. No. 44, pp. 2-6.) Because Di Da is a sham corporation and the mere alter ego of the Individual Defendants, who are directly responsible for the damage suffered by Coach, Di Da's jurisdictional contacts can and should be attributed to the Individual Defendants for purposes of the instant Motion. The Individual Defendants' Motion to Dismiss should, therefore, be denied.

## ARGUMENT

## I.    DEFENDANT SAM ZHU WAS PROPERLY SERVED.

Defendant Sam Zhu, purported president and sole shareholder and owner of Di Da, (*see* Deposition of Sam Zhu ("Sam Dep. I") 26:8-27:10 (a copy of excerpts of Sam Dep. I is attached hereto as **Exhibit A**)), claims that service on him at Di Da's place of business in Elmhurst, New York was not properly effectuated because he purportedly has a separate place of business from

1

that of Di Da. (Motion, p. 3.) Pursuant to Federal Rule of Civil Procedure 4(e), "service may be effected on any individual by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where . . . service is made." Under New York State law, where service occurred, a natural person may be served by:

> delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and . . . by mailing the summons by first class mail to the person to be served at his or her actual place of business bearing the legend "personal and confidential" . . . within twenty days of [the delivery].

N.Y. CPLR § 308(2)

This is precisely how Defendant Sam Zhu was served. On May 6, 2015, service was made upon Defendant Sam Zhu by delivering the summons and First Amended Complaint to Lisa Ling, at the office of Di Da, located at 7416 Grand Avenue, Second Floor, Elmhurst, New York. (*See* Dkt. 59, p. 4.) The summons and First Amended Complaint were then mailed, by first-class mail, to Defendant Sam Zhu at that same address. (*Id.*, p. 5.)[1] This is proper service under New York law, and consequently, under Federal Rule of Civil Procedure 4(e)(1).

Defendant Sam Zhu attempts to avoid culpability for the wrongful, infringing acts perpetuated by him, his company, and his company's officers, directors and employees by seeking to distance himself from his corporate address. He cannot do so. Defendant Sam Zhu argues that Di Da's corporate address is not his "actual place of business" because, unbeknownst to the public, he now purportedly "works out of his home in China." (*See* Motion, p. 3). Under New York law, however, Defendant Sam Zhu's argument is insufficient to defeat the propriety of service here. "[I]nasmuch as [defendant] was an officer and co-owner of the business where CPLR 308(2) service was made, giving rise to a clear identification of the work performed by

---

[1]     Defendant Sam Zhu does not contest that Lisa Ling was of suitable age and discretion or that the envelope in which the summons and complaint were sent complied with N.Y. CPLR § 308(2).

[him] with that place of business, it is not significant that [he] worked mainly from [his] house rather than the place of business." *Columbus Realty Inv. Corp. v. Wend-Heng Tsiang*, 226 A.D.2d 259, 259 (N.Y. App. Div. 1996). Further, where an individual holds out a particular address as his place of business, he is estopped from disclaiming that address as his. *See, e.g.*, *Velez v. Vassallo*, 203 F. Supp. 2d 312 (S.D. N.Y. 2002) ("By holding out a particular address to the public, a defendant is precluded from denying that address constitutes his 'actual place of business'" under § 308(2)) (collecting cases); *Gibson, Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply Ltd.*, 280 A.D.2d 360, 361 (N.Y. App. Div. 2001) (holding, for purposes of § 308(2), that even though defendant may have conducted business elsewhere at times, where defendant held out address as his business address, defendant could not disclaim address as his "actual place of business").

Defendant Sam Zhu consistently held out 7416 Grand Avenue, Second Floor, Elmhurst, New York — the address at which Coach effectuated service upon him — as his business address. The New York Department of State not only lists 7416 Grand Avenue, Second Floor, Elmhurst, New York as the executive office address for Di Da, but also identifies Sam ("Feng") Zhu as Di Da's Chief Executive Officer, whose address, at all times relevant, was 7416 Grand Avenue, Second Floor, Elmhurst, New York. (*See* September 4, 2015 Deposition of Sam Zhu ("Sam Dep. II") 158:11-159:12; 208:20-209:5; Ex. 8 (a copy of excerpts of Sam Dep. II is attached hereto as **Exhibit B**).) This is the location of Di Da's only office. (Sam. Dep. II 208:20-209:5.) This address is also where Defendant Sam ("Feng") Zhu agreed to accept service on behalf of his business. (Sam Dep. II Ex. 8.) Though Di Da has changed the address of its office three times, at no time, has Di Da ever had an office in China or anywhere else outside of the United States. (Sam. Dep. II 208:20-209:22.) As such, Defendant Sam Zhu cannot now

3

disclaim 7416 Grand Avenue, Second Floor, Elmhurst, New York as his "actual place of business." *See, e.g., Velez*, 203 F. Supp. 2d at 326 (finding that the individual defendant's "actual place of business" was the address recorded with New York Department of State as the one for the executive offices of the defendant corporation and the individual defendant, and where the individual defendant was registered with the New York Department of State as the chairman of the board for the defendant corporation and listed as the agent for service of process); *Vid v. Kaufman*, 282 A.D.2d 739, 740 (N.Y. App. Div. 2001) (finding "actual place of business" at address listed in state directory and with state professional licensing agency); *Melton v. Brotman Foot Care Grp.*, 198 A.D.2d 481, 482 (N.Y. App. Div. 1993) (holding that by furnishing address to New York State Division of Professional Licensing Services, defendants were estopped from arguing that service was improper at the address provided). Accordingly, for purposes of determining propriety of service under N.Y. CPLR § 308 and Federal Rule of Civil Procedure 4(e) (1), Defendant Sam Zhu's actual place of business is 7416 Grand Avenue, Elmhurst, New York[2] — where Coach properly effectuated service on him. Thus, Defendant Sam Zhu's Motion to Dismiss must fail.

## II.     THIS COURT HAS PERSONAL JURISDICTION OVER DI DA.

The Individual Defendants do not contest in their Motion to Dismiss that Di Da has sufficient Illinois contacts such that this Court can exercise personal jurisdiction over it, (*see*

---

[2]       In fact, even several months after Defendant Sam Zhu was served, this was still the address of Defendant Sam Zhu's actual place of business, as reflected in the New York Department of State's online records. Seemingly recognizing the weakness of Defendant Sam Zhu's argument, only recently, after service upon Defendant Sam Zhu and after Defendant Sam Zhu's deposition, Di Da amended its records with the New York Department of State to reflect a Chinese address for Defendant Sam Zhu as Chief Executive Officer. (Copies of the New York Department of State's records are attached hereto as **Exhibit C**). The Court may take judicial notice of Di Da's filings with the New York Department of State. *See, e.g., Allen v. Chase Home Fin. LLC*, No. 10 C 8270, 2011 WL 3882814, *4 (N.D. Ill. Sept. 2, 2011) (collecting cases and taking judicial notice of corporation's filings with Illinois Secretary of State); *Darwin Nat. Assur. Co. v. Hellyer*, No. 10 C 50224, 2011 WL 2259801, *1 n. 1 (N.D. Il. June 7, 2011) (same).

*generally*, Motion), and have therefore waived any arguments contesting the same. *See, e.g.,*

*Manning v. Sweitzer*, 891 F. Supp. 2d 961, 966-967 (N.D. Ill. 2012) (holding that an argument

not raised in an opening brief is waived; *Chicago Import, Inc. v. American States Ins. Co.*, No.

09-C-2885, 2010 WL 3385539, *4 (N.D. Ill. Aug. 24, 2010) (failure to raise argument in opening

motion constituted waiver); *Weiss v. Coca-Cola Bottling Co. of Chicago*, No. 91 C 1475, 1992

WL 48018, *2 (N.D. Il. Mar. 3, 1992) (same). Further, this Court has already held that Di Da

had failed to timely assert any jurisdictional arguments and doing so two years into litigation was

prejudicial to Coach:

> Yeah. I mean, it's kind of like way past due. On the type of motion that you're
> filing right now, you may have waived that . . .
>
> That's motion on the pleading as opposed to after all the discovery. This case
> commenced in 2013. That motion is opposed by plaintiffs. It will be prejudicial
> to the plaintiffs at this point to allow that motion to proceed, so motion to dismiss
> at this stage of the proceeding is denied.

(Dkt. No. 54, 4:6-11 (denying Di Da's motion to dismiss).)

Notwithstanding Di Da and the Individual Defendants' waiver of the issue, this Court

also has already explicitly ruled that Di Da's business and contacts with its Illinois customers is

sufficient for the exercise of personal jurisdiction:

> Coach has shown that DDI is subject to personal jurisdiction in Illinois . . . The
> record reflects that DDI solicited business from Illinois customers on its website,
> that DDI had repeated communications with Illinois customers, that DDI shipped
> products to Illinois, and that the amount of sales to Illinois customers by DDI was
> not insignificant. Coach has shown that DDI is subject to personal jurisdiction in
> Illinois.

(Dkt. No. 44, pp. 5-6.) Therefore, because Di Da has sufficient Illinois contacts such that this

Court has exercised personal jurisdiction over it, no reopening of this issue is necessary. *See*

*Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (collecting cases and holding that

"[t]he law of case doctrine 'is a rule of practice, based on sound policy and recites that, when an issue is once litigated and decided, that should be the end of the matter").[3]

## III.  THE INDIVIDUAL DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS.

Courts exercising personal jurisdiction over individual officers, directors, employee and/or shareholders is appropriate where corporate formalities are not substantially observed.

---

[33]     Even if this Court were to reexamine the issue of Di Da's contacts with Illinois – which it should not - because Di Da's contacts with Illinois "are sufficient to satisfy the requirements of due process, the requirements of both the Illinois Long-Arm Statute and the United States Constitution have been met." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (quoting *L.B. Foster Co. v. Railroad Serv., Inc.*, 734 F. Supp. 818, 822 (N.D. Ill. 1990)). The Illinois Long-Arm Statute authorizes service upon Di Da:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts: (1) The transaction of any business within this State; (2) The commission of a tortious act within this State.

735 ILCS 5/2-209(a). Further, "[a] court may also exercise jurisdiction on any other basis nor or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Under a "stream of commerce" theory, Constitutional minimum contacts exist where the sale of the defendant's products in a state other than its home state arises from the defendant's effort to market its products, directly or indirectly, in other states. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287-298 (1980); *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987). In such a scenario, where the presence of a defendant's product in a state is not merely "fortuitous," "random," or "isolated," it is not unreasonable to subject to the defendant to suit in one of those states. *See World-Wide*, 444 U.S. at 297; *Asahi*, 480 U.S. at 110.

Di Da's product sales in Illinois are not isolated, random, fortuitous, or unexpected. Not only does this Court have general jurisdiction over Di Da resulting from Di Da's continuous and systematic contacts with the State of Illinois through its commercial activities in Illinois over at least the last two years, *i.e.*, entering into sales contracts with Illinois residents, selling goods to Illinois residents, and collecting revenues from Illinois residents, but the Court may also exercise specific jurisdiction over Di Da based upon Di Da's sales of infringing products to Illinois residents, the sales which give rise to Coach's injuries in the instant matter. (*Compare* Dkt. No. 47, ¶ 22.B; Dkt. No. 32, pp. 25-36; Dkt. No. 34, p. 7 *with* August 19, 2015 Deposition of Long Zhu ("Long Dep. II") 89:23-90:7 (a copy of excerpts of Long Dep. II is attached hereto as **Exhibit D** ) (conceding that the infringing product was manufactured for Di Da).) Nonetheless, because Di Da has not always maintained records that accurately identify to where its products were shipped, the full extent of Di Da's sales to customers in Illinois, or sales of products infringing upon Coach's intellectual property rights are not necessarily ascertainable. (August 18, 2015 Deposition of Amy Shi ("Shi Dep. II") 260:1-12 (a copy of excerpts of Shi Dep. II is attached hereto as **Exhibit E.**) Di Da also has sent numerous payments to Illinois to ASD and Nielsen, companies based in Illinois, for Di Da and its representatives to attend trade shows those companies organize. (Shi Dep. II 149:8-151:25; 154:3-155:10; 160:7-162:19; Ex. 6.) At those national trade shows, after making sales to Illinois customers, Di Da expected that its products would be sold outside of its home state, including by Illinois customers in Illinois. (Dkt. No. 37, p. 12.) Further, Di Da concedes that "[t]hese models [that Coach alleges infringe upon its trademarks] involve two marks that were the subject of two (2) trademark application by Defendant." (Dkt. No. 32, p. 6.) Such trademark applications evidence Di Da's intent to use the infringing marks in interstate commerce and to obtain nationwide trademark rights.

        Thus, Di Da's contacts with Illinois are both systematic and continuous, and specifically relate to the wrongful conduct alleged by Coach, such that jurisdiction is warranted. Di Da has directed its commercial efforts, including sales and advertising of products, toward Illinois residents and it does not offend notions of fair play, justice, or due process to require Di Da to defend itself in Illinois.

*See Cent. States Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). In the instant matter, Di Da not only fails to *substantially* observe corporate formalities, but seemingly believes that it can *completely* ignore corporate formalities altogether because it is a "small, family-owned business" (Shi Dep. I 31:4-16; 33:6-24.) In fact, Coach need only make a "'minimally viable' showing that the [corporation] is a sham" before "the corporation's contacts are attributed to the individual for the purpose of personal jurisdiction determination." *YKK USA, Inc. v. Baron*, 976 F. Supp. 743, 747 (N.D. Ill. 1997) (denying motion to dismiss) (collecting cases); *Nelsen v. Morris*, No. 03 C 7172, 2004 WL 868398, *3 (N.D. Ill. Apr. 22, 2004) (denying motion to dismiss).

Under New York law[4], a corporation is a "sham" and a court may pierce the corporate veil upon a showing of fraud *or* upon complete control by the dominating individual that leads to a wrong against a third party. *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1052 (2d Cir. 1997). To pierce this veil, a plaintiff must establish: "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Id.*

In allowing Coach, over Di Da's objection, to amend its complaint to include alter ego allegations, this Court has already found that Coach adequately pled, and produced evidence demonstrating, that the Individual Defendants do not observe corporate formalities, disregard Di Da's corporate form, and use the corporation as their alter ego:

---

[4] In this federal question case, the law of the state of incorporation governs whether to pierce the corporate veil. *Fuller v. Midland Credit Mgmt. Inc.*, No. 11 C 5111, 2014 WL 883757, *6 (N.D. Ill. Mar. 6, 2014). Because Di Da's state of incorporation is New York (Dkt. No. 10, Answer, ¶ 6), New York law applies to Coach's claim to pierce Di Da's corporate veil against the Individual Defendants. However, the result of this analysis would be the same under Illinois law.

> Coach has shown, for example, discovery indicating that DDI fails to observe legal requirements of separate corporate existence and that DDI is inadequately capitalized.  Coach has pointed to evidence that it can rely upon to allege in good faith that the newly added Defendants have used DDI as a façade for their personal operations. . . . Coach has stated valid claims in the original complaint and states valid claims in the proposed amended complaint . . . Based on the above, Coach's motion for leave to amend the complaint is granted.

(Dkt. No. 45, p. 1; *see also* Dkt. No. 29, pp. 3-10; Dkt. No 47, ¶¶ 72-107.)  Accordingly, Di Da's veil can be pierced against those individuals who exercise sufficient control over the corporation and disregard the corporate form regardless of whether the individual is a shareholder, officer, director, or employee of the corporation, *i.e.*, the Individual Defendants.  *See, e.g., Freeman*, 119 F.3d at 1051–53 (collecting cases and rejecting arguments that a corporate veil can only be pierced against a shareholder).

Because, as demonstrated below, *infra* Section 3(A), Coach has adequately alleged a valid "alter ego" claim against the Individual Defendants, Di Da's jurisdictional contacts with Illinois must be imputed to the Individual Defendants for purposes of establishing this Court's personal jurisdiction over them.  *See, e.g., Ameritech Mobile Commc'ns, Inc. v. Cellular Cmmc'ns Corp.*, 664 F. Supp. 1175, 1180 (N.D. Ill. 1987) (finding that where complaint sufficiently alleged a valid "alter ego" claim, the contacts of the corporation could be considered when determining whether the court could exercise personal jurisdiction over shareholders).  Therefore, Di Da's contacts with Illinois constitute the Individual Defendants' contacts with Illinois for purposes of jurisdiction.

### A.  Di Da Is The Individual Defendants' Alter Ego.

The Individual Defendants exercise a level of control over Di Da such that Di Da has become nothing more than their mere instrumentality — an instrumentality used to willfully infringe upon numerous Coach trademarks.  (Dkt. No. 47, ¶¶ 74, 75, 105, 106.)  To determine whether a defendant's requisite control over a corporation exists, courts consider factors such as:

(1) the disregard of corporate formalities; (2) inadequate capitalization; and, (3) comingling of personal and corporate funds. *Freeman*, 119 F.3d at 1053. These factors are satisfied in the case at hand.

> ### 1. The Individual Defendants have failed to observe the requirements and formalities of Di Da's separate corporate existence.

The Individual Defendants and Di Da have essentially acted as a single economic enterprise since Di Da's formation without observing any corporate formalities or legal requirements for a corporation, or maintenance of any corporate records. (*See* Dkt. No. 47, ¶¶ 77, 82, 92-98.) For example, the titles, roles, and responsibilities of Di Da's shareholder(s), corporate managers, officers, directors and/or employees are not delineated, set forth in writing, nor governed by any set of bylaws. (Dkt. No. 47, ¶¶ 92, 94; Deposition of Hong Zhu ("Hong Dep. I") 113:6-13 (a copy of excerpts of Hong Dep. I is attached hereto as **Exhibit F**); Sam Dep. I 161:3-20; Deposition of Amy Shi ("Shi Dep. I") 11:22-23; 12:5-13:3; 13:22-14:19; 16:20-23; 23:14-24:5; 33:22-34:3; 38:21-39:7 (a copy of excerpts of Shi Dep. I is attached hereto as **Exhibit G**); Shi Dep. II 51:6-53:19; 54:15-55:6; 55:17-56:16; 62:8-63:11; August 31, 2015 Deposition of Hong Zhu ("Hong Dep. II") 137:19-138:5 (a copy of excerpts of Hong Dep. II is attached hereto as **Exhibit H**).) In actuality, the Individual Defendants could not even articulate the difference between an officer, director, manager, or employee of a corporation, or their associated responsibilities. (*See, e.g.*, Hong Dep. II 57:11-18; 58:2-21; 59:14-16; 183:14-20; Shi Dep. II 55:17-56:1; Sam Dep. II 186:12-16; Long Dep. II 194:23-195:9; Shi Dep. I 11:21-13:13.)

Nevertheless, despite their roles as officers, directors, and/or shareholders, Di Da and the Individual Defendants do not hold regularly scheduled director or shareholder meetings, set agendas for those meetings, or maintain records or minutes of those meetings. (Dkt. No. 47, ¶ 95; Deposition of Long Zhu ("Long Dep. I") 177:16-21 (a copy of excerpts of Long Dep. I is

9

attached hereto as **Exhibit I**); Sam Dep. I 39:24:40:12; Shi Dep. I 34:4-6; Hong Dep. II 66:7-12; Sam Dep. II 66:25-67:8; 69:8-12; 72:4-12; 80:11-13; 81:4-10; 138:13-21.)  *But see* N.Y. Bus. Corp. Law § 602(b) ("A meeting of shareholders shall be held annually for the election of directors and the transaction of other business on a date fixed by or under the by-laws."); N.Y. Bus. Corp. Law § 624(a) ("Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders, board and executive committee, if any, and shall keep at the office of the corporation in this state or at the office of its transfer agent or registrar in this state, a record containing the names and addresses of all shareholders.").  In fact, Di Da and the Individual Defendants are unaware even of the obligation to hold such meetings under New York corporate law, to provide notice of those meetings, to keep records of those meetings or to keep books and records of Di Da.  (Dkt. No. 47, ¶ 96; Shi Dep. I 36:3-6; 36:14-37:2; Hong Dep. II 61:11-19; 76:5-11; Sam Dep. II 133:1-5; 188:15-18.)  In fact, Di Da does not even have a corporate secretary to do so.  (Dkt. No. 47, ¶ 93; Sam Dep. I 44:6-23; Hong Dep. II 66:2-6; Sam Dep. II 197:25-198:2.)  Nor are Di Da's affairs discussed in any depth when meetings are purportedly held; for example, at the last Board meeting, "Sam told everyone that everyone did a great job at their position and ask everyone to keep up good work," but "not much" else was discussed and "[w]e just greet each other, Happy New Year."  (Shi Dep. II 210:16-211:7; *see also* Shi Dep. II 208:23-209:9; 212:5-9; Long Dep. II. 61:4-6; Hong Dep. II 82:10-20.)

Consistent with this lack of formality and lack of knowledge of corporate requirements, the Individual Defendants do not vote on key business decisions, elect Di Da's directors or officers, or review financial statements, such as profit and loss statements or Di Da's tax returns prior to filing.  (Dkt. No. 47, ¶¶ 97, 98; Sam Dep. I 54:23-55:2; 57:3-6; 199:19-25; 200:12-19;

Shi Dep. II 213:2-4; Long Dep. II 61:7-9; 63:13-21; 64:11-14; 116:9-14; Hong Dep. II 137:11-14; 184:25-185:3; Sam Dep. II 165:8-11.) "As far as [Hong Zhu is] concerned, the bylaw of the company is that I need to go to work on time and get off work on time." (Hong Dep. II 138:20-139:19.) Only Hong Zhu contends that she allegedly reviewed Di Da's tax returns and profit and loss statements, although those documents were prepared and printed in English and she not only neither reads nor understands English, but also she does not know the difference between a tax return and an end-of-year financial statement. (Hong Dep. II 124:6-9; 128:12-129:10; 187:21-188:13; Sam Dep. II 164:15-165:7.) Di Da's Board of Directors has also never approved bylaws, loans, contracts with manufacturers, budgets, written business strategies or operating plans, leases, or even the issuance of stock. (Hong Dep. II 132:14-16; 134:2-5; 134:15-20; 135:17-19; Sam Dep. II 173:5-7.) As a result of Di Da's failure to observe even the minimal and necessary corporate formalities, piercing the veil is justified. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 311 (E.D. N.Y. 2010) (granting summary judgment to pierce corporate veil where "[f]ew, if any corporate formalities appear to have been observed . . . There were no formal meetings of the shareholders, even to appoint directors, and no books of minutes of shareholders' meetings were ever kept . . . There were few or no formal meetings of the board of directors, nor were any minutes taken at any such meeting."); *In re Montclair Homes*, 200 B.R. 84 (Bankr. E.D. N.Y. 1996) (piercing corporate veil and identifying election of directors, issuance of stock, and maintenance of corporate records as corporate formalities to be observed); *In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 123 (S.D. N.Y. 2007) (piercing the corporate veil where defendant offered no evidence from corporation's official records of the adoption of by-laws, minutes of meetings, or payroll records).

11

Di Da's lack of corporate records further supports the notion that the corporate form is not respected here. (Dkt. No. 47, ¶ 82.) Di Da's bookkeeper (and apparently also its Director of Finance, Treasurer, and Chief Financial Officer), Hong Zhu, does not know where Di Da keeps its corporate books or records, nor is she aware of any legal requirements to maintain a complete set of corporate books and records. (*Compare* Hong Dep. II 106:8-10; 119:14-19; 140:13-22 *with* N.Y. BUS. CORP. LAW § 624(a).) Consistent with its lack of accurate and complete books, Di Da fails to maintain accurate payroll records; checks received by Amy Shi from Di Da, for example, do not appear on Di Da's official payroll ledger. (Shi Dep. II 221:18-225:22; 226:2-228:15; Ex. 11[5], Ex. 12.) All of the foregoing clearly amounts to a failure to observe corporate formalities. *See Olympia Mortg. Corp.*, 724 F. Supp. 2d at 311 (piercing the veil where "[n]o complete and correct corporate books were ever kept."); *In re Adler*, 469 F. Supp. 2d at 123.

Even Di Da's paperwork relating to the issuance of its stock and creation of its by-laws are suspect. Though incorporated since 2011, Di Da only issued an undated Certificate of Shares to its purported single shareholder the day *before* the compelled 30(b)(6) deposition of Di Da in October 2014. (Long Dep. I 173:24-176:6; Sam Dep. I 40:13-41:17; 44:24-46:6.) However, no consideration was exchanged for those shares, those shares are not listed in Di Da's stock ledger, Di Da does not maintain a list of shareholders, and Di Da's 2012 federal tax return identifies a different shareholder – Defendant Amy Shi – as Di Da's sole shareholder. (Dkt. No. 47, ¶¶ 84, 85; Long Dep. I 173:24-176:6; Sam Dep. I 40:13-41:17; 44:24-46:6; Shi Dep. II 109:7-110:18; Ex. 3[6]; Sam Dep. II 113:13-15; 175:17-19; 177:13-16; 180:4-6; 193:10-14; Ex. 4; Ex. 12.) Two

---

[5] Because some of the exhibits to Shi Dep. II are quite voluminous, for the sake of clarity and convenience Coach only attaches the relevant pages hereto. However, upon the Court's request, Coach can submit full copies of these documents.

[6] Opposing counsel designated Exhibit 3 to Amy Shi's deposition as confidential. Coach will provide a redacted copy of relevant portions of this exhibit directly to Chambers.

of four of Di Da's officers and directors were not even aware of the issuance of shares of stock, and therefore did not vote on or approve of its issuance. (Hong Dep. II 97:6-98:13; Shi Dep. I 134:11-18.) Further, Di Da's alleged by-laws appear to have been copied from an unidentified three-ring binder and are missing pages; more astonishingly, even the name of the company in the by-laws is blank. (Sam Dep. II 172:7-174:10; Ex. 12.) Nor did Di Da's board ever vote on or approve of Di Da's purported by-laws, let alone read them:

> Q: Are these the bylaws of Di Da, sir?
> A: Yes.
> Q: So why doesn't it say "Di Da" in the blank?
> A: I never knew that it was an empty space – I never knew that was a
> blank space.
> Q: Okay. Sir, you have read this document?
> A: No.
> Q: Have you had this document explained to you?
> A: The accountant said something about it.
> Q: Okay. Sir, I'm not asking if they said something about it. I'm asking
> you: Did anyone explain the content of this document to you?
> A: They did not explain the content of this document.
> Q: Okay. But you still contend that these are the bylaws of Di Da; is that
> correct?
> A: Yes.
> Q: Okay. At what board meeting were these bylaws approved? If any.
> A: As soon as the company started.
> Q: Okay. Sir, I'm asking you: Were these bylaws ever approved by any Di
> Da board?
> A: No.

(Sam. Dep. II 172:11-173:7; *see also* Hong Dep. II 137:15-138:12; Long Dep. II 120:18-121:4.)

Given Di Da and the Individual Defendants' failure to observe any corporate formalities, particularly those mandated by New York law, the Court should treat Di Da and the Individual Defendants as one.

### 2. *Di Da is inadequately capitalized.*

Di Da has always been inadequately capitalized and has purportedly never been profitable. (Dkt. No. 47, ¶ 99; Hong Dep. II 192:3-25; 193:18-20; Sam Dep. II 214:15-17.)

Without adequate capitalization, "a corporation becomes a mere liability shield, rather than an independent entity capable of carrying on its own business." *Wachovia Sec., LLC v. Banco Panamericano, Inc.,* 674 F.3d 743, 752 (7th Cir. 2012). Di Da does not have any capital reserves and Defendant Sam Zhu does not know its operating capital, or even what operating capital is. (Sam Dep. II 234:4-6; 235:16-19.)

Further, to date, Di Da has not repaid, or even acknowledged any obligation to repay, $200,000 that was either loaned or gifted by Defendant Long Zhu to either his son – Defendant Sam Zhu – or Di Da. This purported "loan," which was made to Di Da without ***any*** documentation or terms, purportedly served as Di Da's initial operating capital. (Dkt. No. 47, ¶ 100; Long Dep. I 74:6-17; 75:12-19; 76:2-5; 121:2-123:7; Hong Dep. I 60:12-61:20; Sam Dep. I 37:15-23; 38:14-18; Hong Dep. II 98:21-25.) *Compare Olympia Mortg. Corp*., 724 F. Supp. 2d at 311 (pierced the veil on motion for summary judgment where individual defendant provided start-up funds and working capital for defendant corporation, "loans for which defendant has been unable to provide documentation."). It is noteworthy that the funds were never in any account owned or controlled by Di Da, and were kept as cash by either Defendant Sam Zhu or Defendant Long Zhu in China, where Di Da does not have any bank accounts or office. (Hong Dep. II 102:3-25; Long Dep. II 31:7-33:24; 35:5-36:18; 37:13-38:1; Sam. Dep. II 208:20-209:22.) Without these personal cash funds, used to pay Di Da's manufacturers, Di Da would not have been able to pay its creditors. (Sam Dep. II 118:22-119:4.) Di Da also reported additional "Loans from Shareholders" on federal tax returns since 2011, though Di Da's purported sole shareholder, Defendant Sam Zhu, has supposedly never loaned Di Da any funds. (Dkt. No. 47, ¶ 101; Hong Dep. I 61:21-63:22; 64:4-5; 64:11-65:9; 66:22-67:3; 74:14-75:13; Sam Dep. I 46:7-20; 55:16-56:3; Long Dep. I 172:23-173:12; Sam Dep. II 95:1-9; 102:12-103:6; 106:6-25; 110:3-

14

6; 110:18-22; 111:4-23.) Such nonsensical financial records and chronic undercapitalization evidences the fact that Di Da was intended by the Individual Defendants to be merely a liability shield, rather than an independent entity capable of carrying on its own business.

### 3. Di Da and the Individual Defendants comingle personal and corporate funds.

The Individual Defendants also have failed to respect Di Da's corporate form, and continue to disregard corporate formalities, by commingling personal and Di Da corporate funds both prior to and since the filing of the present lawsuit on October 6, 2013. (Dkt. No. 47, ¶ 77.) According to Defendant Sam Zhu, giving $200,000 to him personally and giving $200,0000 to Di Da as a corporation is the same thing. (Sam Dep. II 117:21-24.) In actuality, Defendant Sam Zhu is paid twice by Di Da - once in the name of Sam Zhu and once as Feng Zhu. (Shi Dep. II, Ex. 3.) Moreover, in or around 2011, Defendant Long Zhu used personal funds from the alleged sale of his personal property to pay for merchandise ordered by Di Da. (Dkt. No. 47, ¶ 78; Long Dep. I 19:7-11; 73:18-74:5; Long Dep. II 31:7-34:5; 35:5-10; 35:23-36:3.) However, this "investment," and others like it, were not recorded as capital contributions, loans, stock purchases, advances or in any other manner in Di Da's books and/or tax returns. (Dkt. No. 47, ¶ 79; Shi Dep. I 133:8-16.)

Defendant Long Zhu also pays Di Da's Chinese manufacturers with funds from his personal savings accounts purportedly without reimbursement from or documentation by Di Da, though Di Da's Chief Financial Officer, responsible for keeping track of payments for goods shipped from China to the United States, was unaware of such payments

Q: Do you know any reason why Long would have testified that in 2012 he paid approximately $100,000 on behalf of Di Da to Di da vendors?
A: I don't know.

15

(Hong Dep. II 111:14-18; *see also* Dkt. No. 47, ¶ 80; Shi Dep. I 127:21-128:14; 131:25-133:7; Long Dep. II 35:23-36:13; Hong Dep. II 106:8-17; 111:14-18.) Defendant Long Zhu "just put[s] the money in, the money for goods." (Long Dep. II 31:20-32:4.) In fact, Defendant Long Zhu has purportedly personally and continuously "facilitated a constant cash flow" for Di Da's operations without any documentation evidencing terms. (Dkt. No. 47, ¶ 81; Long Dep. I 170:9-171:17; Long Dep. II 31:20-23.) The record evidence is rife with similar conduct by the Individual Defendants in which the comingled personal and corporate assets, failed to maintain any - let alone adequate - books and records, and failed to follow even the most basis corporate formalities.

Further evidence of the utter failure to respect Di Da's corporate form and comingled assets is the fact that before she was purportedly employed by Di Da, Defendant Amy Shi was given access to Di Da's corporate bank account as its "President." (Shi Dep. II 64:4-66:17; Ex. 1.) And, while Di Da's official payroll information provides that Defendant Amy Shi received only four paychecks in the year 2012, Di Da's checks register reflects numerous additional payments to her that do not otherwise appear on Di Da's official payroll or that could be explained. (Shi Dep. II 221:18-225:22; 226:2-228:15; Ex. 11, Ex. 12.)

In addition, the Individual Defendants have readily available access to Di Da's funds without any policies regarding authorized use or withdrawal. (Dkt. No. 47, ¶ 86; Hong Dep. I 58:5-60:11.) This is true even after this Court issued its order preliminarily enjoining Di Da from making any monetary or asset transfers outside the ordinary course of its business. (Dkt. No. 44). Not only did the Individual Defendants and Di Da do nothing to comply with this Court's order, including ensuring that no funds were extraordinarily transferred between Di Da and the Individual Defendants, they actually went a step further by issuing a purported corporate

resolution obligating Di Da to indemnify the Individual Defendants in this litigation — unquestionably, a business expense out of the ordinary course — and, therefore, have arguably directly caused Di Da to violate the Court's Order.  (Shi Dep. II 146:6-148:2; Sam Dep. II 224:13-24; 227:18-24; 230:5-17; Ex. 14.)  This resolution, drafted by Di Da's counsel in this litigation, was agreed to by all of the Individual Defendants despite the fact that Di Da's alleged sole shareholder, Defendant Sam Zhu, admitted that he never read the resolution, did not understand its details or import, and – most egregiously – was not even aware that this Court entered an order six months earlier enjoining Di Da from undertaking obligations beyond the normal scope and course of its regular business.  (Sam Dep. II 143:7-25; 147:19-21; 149:11-16; 150:3-151:16; 224:13-24.)

### 4. The Individual Defendants exercise control over Di Da such that Di Da is their mere instrumentality.

The Individual Defendants, all officers and board members of Di Da (Long Dep. II  54:7-9; 58:4-10; Sam Dep. II 75:13-14; 76:20-24), each exercise sufficient control over Di Da.  No one else has responsibility for Di Da's operations other than the Individual Defendants.

Defendant Sam Zhu is purportedly "in charge of the whole company."  (Long Dep. I 48:19-49:8; Sam Dep. I 185:13-16.)  Defendant Sam Zhu has testified that he is Di Da's President, Chief Executive Officer, Chairman of the Board and sole owner/shareholder, though he claims that in 2014, he resigned from Di Da's board of directors, without providing written notice, and later rejoined in 2015 without the vote of Di Da's Board.  (Shi Dep. II 50:2-11; Long Dep. II 30:11-22; 54:3-14; Hong Dep. II 55:19-23; 58:22-24; 64:20-65:1; Sam Dep. II 28:10-29:3; 29:22-30:9; 78:12-23; 83:25-84:5.)  *But see* Sam Dep. II Ex. 12, Art. II, § 6 (Any director of the Corporation may resign at any time by giving written notice . . . ); N.Y. BUS. CORP. LAW § 705 ("Newly created directorships resulting from an increase in the number of directors and

vacancies occurring in the board . . . may be filled by vote of the board."); Sam. Dep. II Ex. 12, Art. II, § 8 (same). Though as President and Chief Executive Officer of Di Da, Defendant Sam Zhu is supposed to be "subject to the control of the board of directors," (Sam Dep. II Ex. 12, Art. III, § 5), "[a]nything that happens in the company," Defendant Sam Zhu decides. (Sam Dep. II 181:1-7.) Defendant Sam Zhu alone appoints Di Da's officers and passes its supposed corporate resolutions. (Sam Dep. II 75:2-76:15; 181:14-18; Hong Dep. II 85:6-17; Long Dep. II 63:18-21.) *But see* N.Y. Bus. Corp. Law § 715(a) ("The <u>board</u> may elect or appoint a president, one or more vice-presidents, a secretary and a treasurer, and such other officers as it may determine.") (emphasis added); N.Y. Bus. Corp. Law § 708(b) ("[A]ny action required or permitted to be taken by the board or any committee thereof may be taken without a meeting if <u>all members of the board</u> or the committee <u>consent in writing</u> to the adoption of a resolution of the action.") (emphasis added). Defendant Sam Zhu exercises sufficient control over Di Da.

So, too, does Defendant Long Zhu. Long Zhu is Di Da's Vice President (concurrently with Amy Shi) charged with importing goods from China. (Shi Dep. II 47:20-24; 51:1-19; Long Dep. I 19:7-16; Long Dep. II 26:2-14; 31:7-13; 41:14-17; 49:24-50:9; 50:23-25; 54:3-14; Sam Dep. II 75:23-76:3.) Defendant Long Zhu, however, does not have authority to enter into any contracts on Di Da's behalf. (Hong Dep. II 134:2-5; 135:23-136:1; 136:22-25.)

Though Defendant Amy Shi, Di Da's purported Vice President, claims she does not have an ownership interest in Di Da, Di Da's federal 2012 tax return listed Amy Shi as having owned 100% of Di Da's common stock. (Shi Dep. II 109:7-110:18; 114:24-115:4; Ex. 3; Long Dep. II 30:20-22.) In addition to being listed as its "President" on one of Di Da's corporate bank accounts in 2011, Defendant Shi also was given full authority to wire funds from the account, before she was even employed by Di Da. (Shi Dep. II 64:4-66:17; Ex. 1.) Defendant Amy Shi

was also tasked with registering Di Da's trademark, but in doing so, forged Defendant Hong Zhu's signature on Di Da's revocation of attorney form. (Sam Dep. II 196:16-20; Hong Dep. I Ex. 6; 107:3-25; Shi Dep. I 545:8-546:11.) Defendant Amy Shi exercises sufficient control over Di Da to warrant piercing Di Da's corporate veil.

Defendant Hong Zhu also controls Di Da such that Di Da has become her mere instrumentality. Defendant Hong Zhu, Di Da's Director of Finance, Treasurer, and Chief Financial Officer, is purportedly solely responsible for Di Da's salary decisions, including the compensation of Di Da's President, Chief Executive Officer, Board members, and officers. (Shi Dep. II 44:3-19; 52:9-14; 81:8-82:13; 87:3-7; Long Dep. II 26:15-27:12; 54:3-14; 180:7-24; Hong Dep. I 52:16-18; Hong Dep. II 182:5-10; 194:4-6; Sam Dep. II 32:17-33:7; 57:13-15; 75:13-20; 82:15-22; 90:19-23; 158:11-159:7.) *But see* Sam Dep. II Ex. 12, Art. II, § 10 ("The Board of Directors shall have the authority to fix the compensation of directors for services in any capacity."); Art. III, § 3 ("The salaries of all officers and agents of the Corporation shall be fixed by the Board of Directors."). Payment for Di Da's business expenses is approved and processed through Hong Zhu, though she does not verify the credit card records with receipts or invoices. (Hong Dep. II 156:5-21; 194:4-10; Long Dep. II 69:20-70:3.) Similarly, Hong Zhu is responsible for approving Di Da's profit and loss statements — again, though she cannot understand the language in which they are prepared. (Long Dep. II 116:9-14; Hong Dep. II 187:21-188:13.) She also is Di Da's accountant, bookkeeper, and custodian of records charged with safeguarding Di Da's corporate documents, but she does not know where Di Da's books or records are kept. (Hong Dep. I 24:17-25; Hong Dep. II 119:11-19.) Nor does she know that Di Da is even required to maintain a complete set of books and records under New York law. (Hong Dep. II 140:13-22.) She cannot possibly, then, be keeping "full and accurate accounts of

19

receipts and disbursements in books belonging to the Corporation" as required under Di Da's "by-laws." (*See* Sam Dep. II Ex. 12, Art. III, § 8. Like Defendants Sam Zhu, Long Zhu, and Amy Shi, Defendant Hong Zhu also exerts sufficient control over Di Da.

Coach has more than made the required "minimal showing" that Di Da fails to observe corporate formalities and that its officers, directors, and shareholder - the Individual Defendants - exercise sufficient control over Di Da such that Di Da has become their mere alter ego. Consequently, Di Da's limited liability corporate veil should be pierced and the Individual Defendants can, and should, be held personally liable for the wrongdoings of Di Da. Similarly, because no independent identities exist between Di Da and the Individual Defendants, this Court can, and should, impute Di Da's jurisdictional contacts with Illinois to the Individual Defendants. Therefore, the Individual Defendants' Motion should be denied.

### B. The Individual Defendants Used Di Da To Perpetrate Their Trademark Infringement.

Each of the Individual Defendants was personally involved in the design, sale, and/or advertisement of products bearing marks infringing on the Coach trademarks. Long Zhu personally designed Di Da's collections and made the ultimate decision for Di Da as to what product models Di Da would sell, including the products bearing the infringing marks:

> Q: And do you recall the circumstances in which this particular design was created?
>
> A: Yes, I remember the circumstances. The factory designed 20 bags, and I chose ten of them.

(Long Dep. I 157:15:-19.)

> Q: You didn't have to purchase – walk me through the process for this particular bag. How did you – as the person in charge of design and manufacturing for Di Da, how did you come to select this product?
>
> A: I though looks good, so I picked it.

20

(Long Dep. II 91:24-92:7; *see also* Long Dep. II 50:23-25; Shi Dep. I 105:13-23; 118:3-17.) Prior to the alleged time Amy Shi joined Di Da, Hong Zhu and Sam Zhu were in charge of Di Da's sales, including the sale of infringing products in 2010 and 2011:

> Q: Did you sell handbags that looked like that when you were in-charge of Sales for Di Da?
> A: Yes.

(Hong Dep. I 36:18-21; *see also* Hong Dep. I 32:21-23; 34:18-36:6; Shi Dep. I Ex. 7.) And, once Amy Shi began working at Di Da, she was in charge of marketing, advertising, merchandising and sales. (Shi Dep. I 15:23-16:6; 247:4-9.) Her duties necessarily included the marketing and promotion of products bearing the marks at issue on Di Da's website, the content of which was approved by Sam Zhu:

> Q: Okay. Were products bearing the marks at issue advertised by Di Da via electronic media?
> A: Yes.

(Shi Dep. I 157:11-14; *see also* Shi Dep. I 152:20-23; Sam Dep. I 235:18-236:2.) The Individual Defendants' use of Di Da as an instrument to carry out their violations of the Lanham Act is precisely the type of activity that has been found to be the exercise of control used to commit a fraud or other wrong and justifying the exercise of alter ego personal jurisdiction. *See, e.g., Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994) (asserting alter ego personal jurisdiction due to individual defendants' involvement in design, inspection, pricing, and exporting of infringing marks and products); *The Finance Co. of Am. v. Bankamerica Corp.*, 493 F. Supp. 895, 909 (D. Md. 1980) (jurisdiction over parent was proper where parent selected infringing name used by subsidiary and designed promotional campaign). Because the Individual Defendants used Di Da to infringe upon Coach's trademarks, imputing Di Da's jurisdictional contacts to the Individual Defendants is warranted.

21

**C.    Di Da And The Individual Defendants' Infringing Activities Have Injured Coach.**

Di Da and the Individual Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Coach's reputation and the goodwill symbolized by its trademarks.  The Defendants sold versions of products that are virtually identical to Coach's products and used marks almost identical to Coach's Trademarks.  Coach's trademarks have been used for more than thirty years and have been infamously associated with high-quality purses and handbags, amongst other products.  Coach's CC Design, or Signature "C" Trademarks have become widely recognized by the public and trade throughout the United States and world through long use, extensive sales, and significant advertising and promotional activities.  Di Da and the Individual Defendants sold products, namely handbags and purses, that looked virtually identical to the aforementioned products that Coach sells.  Shown by the set of images below, the Defendants' products and marks appear virtually identical to Coach's Signature C Trademarks that Coach uses on its high-quality goods:

| <u>Coach's 'Signature C' Trademark</u> | <u>Defendant's Infringing Mark</u> |
|:---:|:---:|
|  | |

Di Da and the Individual Defendants intentionally used a mark that looks virtually identical to Coach's trademark in order to confuse and deceive the consuming public into thinking that Defendants' products are in fact manufactured by or emanate from Coach.  They are purposely

attempting to benefit and trade off of Coach's goodwill and reputation in violation of the Lanham Act. The Court has already noted that "[t]he record at this juncture reflects an intent by DDI to pass off its products as Coach products, and to unjustly benefit from the reputation and goodwill built up by Coach over the many years of its operations" (Dkt. No. 44, p. 9) and that "Coach has shown that if DDI was allowed to sell products under the guise of Coach Marks significant monetary harm could be caused to Coach." (Dkt. No. 44, p. 12.) Consequently, the wrongful conduct of Di Da and the Individual Defendants has resulted in injury to Coach.

Given Di Da's status as the Individual Defendants' alter ego, an alter ego used to infringe upon Coach's trademarks, this Court should treat Di Da and the Individual Defendants as one. Di Da's systematic, continuous, and specific jurisdictional contacts with Illinois, then, constitute the Individual Defendants' contacts with Illinois. Such contacts are sufficient for the Court to exercise its jurisdiction over Di Da and the Individual Defendants. This Court should do so. The Individual Defendants' Motion to Dismiss should therefore be denied.

## IV. THE INDIVIDUAL DEFENDANTS' DECLARATIONS SHOULD BE DISREGARDED.

In support of their Motion, the Individual Defendants make sweeping declarations of both fact and law, purportedly based on their "personal knowledge." This Court should not credit those declarations, however, as they are inconsistent with and contradict each declarant's deposition testimony. *See, e.g., Hubbard v. Certified Grocers Midwest, Inc*., No. 02 C 9178, 2004 WL 546902, *3 (N.D. Ill. Mar. 17, 2004) (Der-Yeghiayan, J.) (collecting cases); *Milan v. City of Chi*., No. 12 C 5621, 2013 WL 6255013 *4 (N.D. Ill. Dec. 3, 2013) (Deryeghiayan, J.) (collecting cases); *Bank of Ill. v. Allied Signal Safety Restraint Sys*., 75 F.3d 1162, 1168–69 (7th Cir. 1996) (explaining that a party cannot create a "sham" issue of fact with affidavits that contradict prior depositions). Further, the Individual Defendants' declarations are rife with

conclusions of law or ultimate fact, including whether the Individual Defendants commingled funds (Dkt. No. 63-1, p. 9, ¶ 12), whether the Individual Defendants "availed [themselves] of the privilege of conducting business in Illinois" (Dkt. No. 63-1, ¶ 8 of Declarations), and whether the Individual Defendants have "taken any action expressly aimed at the state of Illinois." (Dkt. No. 63-1, ¶ 10 of Declarations.) As such, any statements of this nature are transparently self-serving, not grounded in fact and should be ignored. *See, e.g., Cohen v. Ayers*, 449 F. Supp. 298, 321 (N.D. Ill. 1978); *Chi. Dist. Council of Carpenters Pension Fund v. Anthony Floor and Wall Covering Co.,* No. 93 C 7246, 1994 WL 650004, *1 (N.D. Ill. Nov. 16, 1994) ("The affidavit is no place for ultimate facts and conclusions of law.").

Even then, where Coach controverts the declarations of the Individual Defendants, as Coach has done here, any factual dispute must be resolved in Coach's favor. *See YKK*, 976 F. Supp. at 744 (citing *Saylor v. Dyniewski*, 835 F.2d 341, 342 (7th Cir. 1988)). For example, Sam Zhu and Hong Zhu declare that "I am aware that the plaintiffs in this action claim that DI DA sold or offered to sell goods in the state of Illinois. However, my work for DI DA never had anything to do with sales." (Dkt. No. 63-1, ¶ 11 of Declarations.) Yet, Hong Zhu testified under oath that both she and Sam Zhu <u>were</u> in charge of Di Da's sales in 2011. (Hong Dep. I 32:21-23; 34:18-35: 36:6; Shi Dep. I Ex. 7.) Further, while Amy Shi declares that she has "never conducted any business in or directed at the state of Illinois," she <u>has</u> had telephone conversations with Illinois customers and has directly emailed Di Da clients in Illinois for the purpose of advertising, promoting, and selling Di Da products. (*Compare* Dkt. No. 63-1, p. 8, ¶ 5 *with* Dkt. No. 63-1, p. 8, ¶ 4; Shi Dep. II 171:9-13; Ex. 8.)

Further, such declarations should be given little, if any, credence where the terminology used by the Individual Defendants, in particular by Amy Shi, is subject to their personal – and

incredible - definitions.  For example, according to Amy Shi, "engaging in transactions in the state of Illinois" or "conducting any business in or directed at the state of Illinois" does not include shipping products to a customer in Illinois, mailing checks and making payments to companies in Illinois who host trade shows, or giving refunds to businesses or customers in Illinois.  (Shi Dep. II 167:4-14; 168:23-169:4; 203:7-20.)  Nor does an Illinois customer reordering a product from Di Da from its place of business in Illinois constitute "transacting business" according to the Individual Defendants.  (Shi Dep. II. 203:21-204:12.)  Given the unreliability of the declarations produced by the Individual Defendants, they should all be disregarded by this Court.

## CONCLUSION

For the foregoing reasons, Coach respectfully requests that this Court deny the Motion to Dismiss this Action Against Sam Zhu for Insufficiency of Service of Process[7] and for Lack of Personal Jurisdiction and the Motion to Dismiss this Action Against Long Zhu, Hong Zhu, and Amy Shi for Lack of Personal Jurisdiction, and grant such other and further relief as the Court may deem just and proper.

Dated:  October 20, 2015                                  Respectfully submitted,

                                                         BRYAN CAVE LLP


                                                         By:___/s/ Lauren J. Caisman
                                                             S. Patrick McKey, #6201588

---

[7]     Federal Rule of Civil Procedure 4(m) only requires that a defendant be served within 120 days, unless good cause is shown.  Service was effected upon Defendant Sam Zhu, 70 days after the filing of Coach's First Amended Complaint.  (*See* Dkt. Nos. 47, 59.)  This is well-within the deadline for service.  To the extent, however, that this Court finds dismissal is appropriate, which it should not, such dismissal should be without prejudice and Coach should be permitted time in which to re-serve Defendant Sam Zhu.  *See e.g.*, Fed. R. Civ. P. 4(m) (providing for dismissal "without prejudice"); *Landlock Natural Paving, Inc. v. Desin L.*P., No. 12 C 2893, 2015 WL 753828, *3 (N.D. Ill. Feb. 20, 2015) (citing *Cardenas v. City of Chi.*, 646 F.3d 1001, 1007 ("A dismissal pursuant to a Rule 12(b)(5) motion ordinarily should be entered without prejudice.")).

Donald A. Cole, #6299318
Lauren J. Caisman, # 6312465
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Fax: (312) 602-5050
patrick.mckey@bryancave.com
donald.cole@bryancave.com
lauren.caisman@bryancave.com
*Attorneys for Coach, Inc. and*
 *Coach Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of October 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

_____/s/ Lauren J. Caisman_
Lauren J. Caisman

27