IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 13 C 7165<br>) |
| DI DA IMPORT AND EXPORT, INC.<br>(D/B/A DI DA NEW YORK), et al. | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Coach, Inc. and Plaintiff Coach Services, Inc. (collectively referred to as "Coach") contend that they have expended substantial time, money, and other resources in developing, advertising and otherwise promoting certain marks (Coach Marks), and that such marks are widely recognized and exclusively associated with Coach. Defendant Di Da Import and Export Inc. D/B/A Di Da New York (Di Da) and the individual Defendants are allegedly attempting to sell on its website products

1

such as wallets, duffel bags, and accessories which are not Coach products, but bear logos and source-identifying indicia and design elements that are studied imitations of the Coach Marks. Coach brought the instant action and includes in its first amended complaint a trademark counterfeiting claim brought under 15 U.S.C. § 1114 of the Lanham Act (Section 1114) (Count I), a trademark infringement claim brought under Section 1114 (Count II), a false designation of origin and false advertising claim brought under 15 U.S.C. § 1125(a) of the Lanham Act (Count III), a common law trademark infringement claim (Count IV), an unfair competition claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act), 815 ILCS 505/1 *et seq.* (Count V), a common law unfair competition claim (Count VI), an unjust enrichment claim (Count VII), and a piercing the corporate veil claim (Count VIII). On February 25, 2015, the court granted Coach's motion for a temporary restraining order. Defendant Sam Zhu now moves to dismiss the claims brought against him based on insufficiency of process, and Sam Zhu, Defendant Long Zhu, Defendant Hong Zhu, and Defendant Amy Shi (collectively referred to as "Moving Defendants") move to dismiss the claims brought against them based on lack of personal jurisdiction.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a party may move to dismiss claims based on insufficient service of process. Fed. R. Civ. P. 12(b)(5). Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party can move to dismiss

claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). When the court adjudicates a motion to dismiss brought pursuant to Rule 12(b)(2) based on written materials submitted to the court, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(internal quotations omitted). In determining whether the plaintiff has met his burden, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). In addition, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782; *see also Leong v. SAP America, Inc.*, 901 F.Supp. 2d 1058, 1061-62 (N.D. Ill. 2012)(explaining that "when the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

## DISCUSSION

I. Sufficiency of Process

Sam Zhu argues that he was not properly served in this case. Pursuant to Federal Rule of Civil Procedure 4(e) (Rule 4(e)), an individual . . . may be served in

3

a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Fed. R. Civ. P. 4(e)(1). Coach contends that service was executed upon Sam Zhu by delivering the summons and first amended complaint to Lisa Ling at the offices of Di Da at 7416 Grand Avenue, Second Floor, Elmhurst New York (Elmhurst Address) and by mailing the documents by first-class mail to Sam Zhu at that address. Coach contends that under New York state law, service may be effectuated by mailing the summons and complaint by first-class mail to the person's place of business.

Sam Zhu argues that Di Da's office is not his place of work and that he actually works from his home in China. Sam Zhu contends that the service at Di Da's office was thus not sufficient to properly serve him in this case. However, Coach has presented evidence showing that Sam Zhu has repeatedly held out the Elmhurst Address as his business address. In addition, Coach has shown that the Elmhurst Address was Di Da's only office at that time.

Coach has also pointed out that at the time of service the Elmhurst address was listed as Sam Zhu's business address in the New York Department of State's records. The Chief Executive Officer for Di Da who was listed with the New York Department of State was "Feng Zhu." "Feng Zhu" is apparently another name used by Sam Zhu since Sam Zhu testified at his deposition that he has always had complete ownership in Di Da and has been its Chief Executive Officer. (Z Dep. 197). The New York Department of State records indicate that "Feng Zhu" agreed to

accept process at the Elmhurst Address. The record clearly shows that Sam Zhu was properly served in this case in accordance with Rule 4(e). It is too late at this juncture for Sam Zhu to claim that he is in China and is not subject to service in the United States. Sam Zhu points to his deposition in November 2014, when he stated: "live in China now." (Reply 2). However, even if Sam Zhu was telling the truth and resided in China, that would not contradict the fact that his business address was the Elmhurst address or call into doubt the other evidence that Coach has pointed to in response to the instant motion. Therefore, Sam Zhu's motion to dismiss for insufficiency of process is denied.

II. Personal Jurisdiction

Sam Zhu, Long Zhu, Hong Zhu, and Amy Shi contend that this court lacks personal jurisdiction over them. Personal jurisdiction involves consideration of both federal and state law. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010)(stating that the Court was "still unable to discern an operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction")(internal quotations omitted)(quoting *Hyatt Int'l Corp.*, 302 F.3d at 715). A court has general personal jurisdiction over a defendant if the defendant has "continuous and systematic" contacts with the forum that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The court has specific personal jurisdiction over a defendant if "(1) the defendant has purposefully directed his

activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citation omitted).

Coach has not pointed to sufficient individual contacts by Moving Defendants to subject them to personal jurisdiction in Illinois. However, Coach asserts that this court has personal jurisdiction over Di Da, and that it can pierce the corporate veil to hold the Moving Defendants liable. The parties concede that the issue of piercing the corporate veil is governed by New York state law. (Resp. 7); (Reply 8). Under New York law, in order to pierce the corporate veil, the plaintiff must establish: (1) that the "[owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor," (2) that "such control has been used to commit a fraud or other wrong," and (3) that "the fraud or wrong results in an unjust loss or injury to plaintiff." *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)(internal quotations omitted)(quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)(stating that "[i]n determining whether complete control exists," a court should consider factors such as "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or

6

guarantee of the corporation's debts by the dominating entity[;] and (10) intermingling of property between the entities").

Coach has shown that Di Da does not regularly observe corporate formalities. The evidence indicates, for example, that Coach does not hold regularly scheduled director and shareholder meetings, or maintain records or minutes of those meetings. Nor does the evidence show that Di Da has a vote regarding important business decisions or a vote to elect directors or officers. (S Zhu 30(b)(6) Dep. 200); (S Zhu Dep. 133, 150, 188); (L Zhu Dep. 58, 61). Nor is there an indication that Di Da has ever been adequately capitalized. This is illustrated, for example, by the evidence indicating that Di Da was able to operate by using the personal funds of Sam Zhu and Long Zhu. Coach has pointed to evidence showing that Di Da's manufacturers were paid in China where Di Da does not have a bank account or office and were paid in cash using the personal funds of Sam Zhu and Long Zhu. (S Zhu Dep. 209); (L Zhu Dep. 36-37). Coach also points out that although Di Da reported additional "Loans from Shareholders" on federal tax returns, Di Da has asserted that Sam Zhu is its sole shareholder and that he denies that he ever loaned Di Da any funds. (S Zhu 30(b)(6) Dep. 54); (S Zhu Dep. 46, 54).

Coach has pointed to sufficient evidence at this juncture to support the theory of piercing the corporate veil against Sam Zhu and Long Zhu. Sam Zhu claims to be the sole shareholder in Di Da, the chief executive officer and the one who is in charge of the whole company. (S Zhu 30(b)(6) Dep. 26, 185); (S Zhu Dep. 181, 208); (L Zhu Dep. 30). The evidence shows that Long Zhu is intricately involved in

the operations in China and the holding and management of funds used to operate Di Da. Long Zhu also testified at his deposition that he gives significant amounts of money to Sam Zhu to invest in Di Da so that he can share in the business and its profits. (L Dep. 31-33). Long Zhu testified that on one occasion he "gave" Sam Zhu $100,00 in cash. (L Zhu Dep. 31, 35-36). Long Zhu admitted that he did not produce to Coach any receipt for that gift. (L Zhu Dep. 36). Long Zhu claimed instead that a significant amount of cash was merely inserted in the Di Da operations by paying some of Di Da's manufacturers in China although Long Zhu failed to produce receipts or invoices for such cash. (L Zhu Dep. 37). The evidence also shows that Long Zhu had control over all the selection of products and manufacture of products in China. (L Zhu Dep. 41). The evidence at this juncture shows that both Sam Zhu and Long Zhu had extensive control over the operations of Di Da and commingled their personal funds with the supposed funds of Di Da and that Di Da is merely a fictitious front for their business activities.

In regard to Amy Shi, Coach argues that she had certain responsibilities at Di Da as a Vice President, that she had authority to wire funds, that she received payments from Di Da that were not included in her reported paychecks, and that a tax filing indicated that she owned stock in Di Da. In regard to Hong Zhu, Coach indicates that the evidence shows that she had certain responsibilities at Di Da such as serving as the accountant, bookkeeper, and custodian of records and yet seems to lack knowledge as to legal requirements for such responsibilities. Coach, however, has not at this juncture pointed to sufficient evidence to show that Di Da is a mere

8

instrumentality of Amy Shi or Hong Zhu and that they are the real actors behind Di Da.  In fact, the evidence relating to Sam Zhu and Long Zhu shows that they were the ones with the main control of Di Da.  The mere fact that monies from Di Da may have been covertly funneled to Amy Shi and/or Hong Zhu or that they had certain titles or responsibilities is not sufficient to hold them liable for Di Da's activities.  Therefore, the motion to dismiss the claims brought against Amy Shi and Hong Zhu is granted, and the motion to dismiss the claims brought against Sam Zhu and Long Zhu is denied. The court is not finding that Coach is entitled to pierce the corporate veil.  Such a finding will be made along with the merits of the remaining claims in this case.  The court is merely finding that Coach has pointed to sufficient evidence to indicate that Sam Zhu and Long Zhu are subject to personal jurisdiction in this court.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss the claims brought against Amy Shi and Hong Zhu is granted, and the motion to dismiss the claims brought against Sam Zhu and Long Zhu is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   December 15, 2015