**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COACH, INC. and COACH SERVICES, INC.,

    Plaintiffs,

 v.

DI DA IMPORT AND EXPORT INC. d/b/a DI DA
NEW YORK, LONG ZHU, and SAM ZHU,

    Defendants.

**Case No. 13-cv-7165**

**Honorable Samuel Der-Yeghiayan**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DI DA IMPORT AND EXPORT INC., LONG ZHU, AND SAM ZHU,
AND MEMORANDUM IN SUPPORT**

  Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter collectively referred to as "Coach") file this Motion for Default Judgment against Defendants Di Da Import and Export Inc. d/b/a Di Da New York ("Di Da"), Long Zhu, and Sam Zhu (collectively, "Defendants"), and Memorandum in Support, and state the following:

## I.     BACKGROUND

### A.     The Coach Trademarks And Defendants' Infringing Conduct

For decades the Coach name has symbolized the highest standard in product performance, workmanship, materials and distinctive design as well as Coach's willingness to stand behind its products. (*See* Dkt. No. 47, ¶13-16.) The style and quality of Coach's products are legendary, as are its products and the numerous trademarks it owns. (*Id.*)[1] Handbags, wallets, and accessories containing counterfeit marks hurt Coach's reputation because Coach is unable to ensure the quality of the products bearing infringing marks. Purchaser confidence is also undermined where the name Coach no longer identifies a consistent level of quality. (*See* Dkt. No. 44, p. 12 ("[T]he public must have confidence that its proprietary marks will be protected by the courts in this country.").) Further, purchasers are less likely to consider Coach a prestigious brand if others can own what appears to be a genuine Coach brand at considerably less than the price of the genuine product. (*See e.g.*, Temporary Restraining Order, Dkt. No. 98, p. 4 ("Coach has shown that its mark is strong and that customers would take significant care in ensuring that they were getting an authentic Coach product.").)

Defendants in this action are in the business of manufacturing, distributing, offering for sale and selling merchandise bearing logos and source-identifying indicia and design elements that are studied imitations of, and infringe upon, the Coach Trademarks (hereinafter referred to as the "Infringing Products"). (*See* Dkt. No. 47, ¶ 22.) As a result, Coach filed the present lawsuit against Di Da on October 6, 2013, for trademark infringement under the Lanham Act, as well as related state-law claims, and subsequently amended its complaint to add Long Zhu and Sam Zhu,

---

[1] The phrase "Coach Trademarks" shall have the meaning assigned to it in Paragraph 16 of the Amended Complaint. (Dkt. No. 47.)

the officers and/or owners of Di Da, as Defendants on February 26, 2015, once evidence established that they were using Di Da as their alter ego. (*See* Dkt. Nos. 1, 47.)

B. **Defendants' Road To Default**

Defendants have repeatedly disregarded this Court's orders and consistently refused to comply with their obligations under the Federal Rules of Civil Procedure and Local Rules of Court, and have also failed to take any accountability for their disregard of this Court and its procedures. Defendants' counsel has offered excuse after excuse for her clients — the weather, illness, computer problems, personal emergency, the time difference between New York and China, difficulties in navigating Chinese legal and administrative procedure, travel, and absence from the office (to name a few) — in seeking to avoid to timely and/or fully respond to Coach's discovery requests, to meet and confer with counsel for Coach, to arrange the depositions of witnesses, and to meet Court-ordered deadlines. (*See e.g.,* Dkt. Nos. 73, pp. 1-2; 73-1; 73-2.) Defendants, themselves, have likewise adopted a similar attitude with respect to their wrongful conduct and obligations to the Court by blaming others or attributing their own illegal conduct to yet another "mistake." (*See e.g.*, Dkt. No. 73-3, Dkt. No. 73-4.)

Since the commencement of this action in October 2013, Defendants' conduct, including through their counsel, has been nothing but dilatory and aimed to needlessly prolong this litigation, which has forced Coach to incur substantial and unnecessary expense and has, likewise, wasted this Court's time and resources. (*See, e.g.*, Dkt. Nos. 37-39; 73-6.) The following are but a few examples of the foregoing conduct:

- Di Da's 30(b)(6) designee was utterly unprepared to testify as to most of the topics identified in Coach's Rule 30(b)(6) deposition notice. Ultimately, after five hours of testimony, though Di Da's designee had lived, worked, and/or conducted business in the United States for over a decade and had graduated from high school and Syracuse University while receiving instruction in English, Di Da's counsel unilaterally terminated the deposition as it supposedly could not "go forward without having a Mandarin interpreter." (*See* Motion to Compel, Dkt. No. 23, pp. 1-3; Dkt. No. 23-2; Dkt. No. 73-

2

5.) Subsequently, Coach then had to expend the resources and take up this Court's time by moving to compel the production of a competent 30(b)(6) witness. (Dkt. No. 23.) This Court did. (Dkt. No. 35.)

- Though the Court allowed jurisdictional discovery (Dkt. No. 73-7), Defendants only produced all relevant documents after Coach moved to compel their production. (Dkt. No. 90.) Further, this Court summarily denied the Defendants' Motion for Protective Order filed only a day prior to scheduled depositions. (Dkt. Nos. 69, 71, 74.) Nonetheless, Di Da's officer, Amy Shi, failed to appear for her deposition as noticed. (*See* Dkt. No. 73-11.)

- Defendants have filed numerous "declarations" under oath and subject to penalty of perjury that have subsequently been revealed to be either false or incomplete. For example, on January 20, 2016, the Court issued a temporary restraining order against Long Zhu and Sam Zhu and ordered them, within ten days, to file a declaration of their assets. (Dkt. No. 105.) Long Zhu and Sam Zhu belatedly filed these declarations (Dkt. No. 115), but failed to identify all of their interests, Gallingly, the Defendants even omitted disclosing their interests in Di Da in the declarations. Counsel for the Defendants – who has a duty of candor to the Court – then knowingly filed the affidavits. (*See* Dkt. No. 121.)

Most recently, Defendants have failed to comply with this Court's orders requiring them to obtain local counsel and appear in Court. (Dkt. Nos. 120, 125, 131.) As a result, and Defendants having failed to defend themselves in this suit, the Court entered default on February 18, 2016. (Dkt. No. 131.) Thus, Coach requests that this Court: (1) enter final default judgment against Defendants; (2) enter a permanent injunction in the same form pled in their complaint; and, (3) award Coach statutory damages pursuant to 15 U.S.C. §1117(c).

## II. ARGUMENT AND AUTHORITIES

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as Coach's causes of action arise under the Lanham Act, 15 U.S.C. § 1051. A court may award a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) following the entry of default by the court clerk under Rule 55(a). *See* FED. R. CIV. P. 55. Default was entered under Rule 55(a) on February 18, 2016, when, after more than two years of litigation, Defendants decided to no longer defend this suit, and failed to appear in contravention of the Court's February 4, 2016 and

3

February 11, 2016 orders requiring them to do so. (*See* Dkt. Nos. 125, 131.) Since that time, Defendants have not otherwise defended this lawsuit.

"It is well settled that when a defendant defaults, all well-pleaded allegations are considered admitted." *Louis Vuitton v. Wright*, No. 88-cv-2750, 1992 WL 448394, at *3 (N.D. Ga. 1992); *Louis Vuitton v. Morales*, No. 06-cv-1800, 2007 WL 60665 (1st Cir. 2007) (explaining when default had been entered, the defendant was "deemed to have conceded the truth of appellee's factual allegations"). When a court determines that defendants are in default, the factual allegations of the complaint must be taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *see also U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). This is true even if the defaulting defendants answer the complaint. *Wright*, 1992 WL 448394, at **1, 3.

### A. Coach Is Entitled To A Final Default Judgment Against Defendants

Since the very outset of this case, Defendants have repeatedly impeded Coach's efforts to take discovery, failed to appear at several Court-ordered conferences, and disregarded numerous Orders and Federal and Local Rules. (*See supra* § I; *see also* Dkt. No. 131.) Accordingly, on February 18, 2016, the Court granted Coach's oral motion for entry of default, which Defendants have failed to set aside. (Dkt. No. 131.) Thus, a default judgment is appropriate here.

In light of Defendants' failure to meaningfully cooperate and abide by their obligations throughout this litigation, Coach requests an award of statutory damages authorized by 15 U.S.C. § 1117(c)(2) for willful trademark infringement against Defendants, jointly and severally, in the amount of not less than $6,800,000 for the Defendants' use of infringing Coach Trademarks on products offered for sale and sold by Defendants, pursuant to 15 U.S.C. § 1117(d). Furthermore, the Court should find that Defendants willfully and intentionally used marks or designations,

4

knowing that such marks or designations are infringing marks. Coach also seeks entry of a permanent injunction against all Defendants.

### B. Defendants Are Liable For Willful Trademark Infringement

A claim of trademark infringement pursuant to the Lanham Act is properly pleaded where a plaintiff alleges that: (1) its mark is distinctive enough to be worthy of protection; (2) defendants are not authorized to use plaintiff's mark; and, (3) defendants' use of plaintiff's mark causes a likelihood of confusion as to the origin or sponsorship of defendants' products. *See Neopost Indus. B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001)).

Coach alleges in its Amended Complaint that Coach's marks are highly distinctive, that Defendants are not authorized to use the Coach Trademarks, and that Defendants' use of the Coach Trademarks causes a likelihood of confusion. (Dkt. No. 47, ¶¶ 14-21.) Furthermore, as shown by the allegations in the Amended Complaint, Defendants are well aware of the extraordinary fame and strength of the Coach Trademarks, and the incalculable goodwill associated therewith. (*Id.* at ¶¶ 22-25, 32, 40, 55.) Further, Defendants have no license, authority, or other permission from Coach to use any of the Coach Trademarks in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of any products. (*Id.* at ¶¶ 24, 30, 38, 53.)

Defendants have been engaging in the above-described illegal infringing activities knowingly and intentionally, and with reckless disregard and willful blindness to Coach's rights, and with bad faith, for the purpose of trading on the goodwill and reputation of the Coach Trademarks and Coach products. (*Id.* at ¶¶ 25, 32, 40, 55.) Defendants' activities are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between them and Coach. (*Id.* at ¶¶ 26, 31, 39, 46, 54.)

In fact, Defendants' history of infringement is extensive. As early as 2011, Defendants began infringing on Coach's trademarks. In fact, Defendants attempted to register certain trademarks with the United States Patent and Trademark Office ("USPTO") which Coach opposed because the marks Defendants sought to register were confusingly similar to Coach's registered trademarks. The USPTO ultimately refused to register Defendants' marks. (*See* USPTO Materials, attached hereto as **Exhibit 1**.) Nevertheless, Defendants sold Infringing Products bearing the marks Defendants had attempted to register and which Coach opposed.

In early 2013, after learning of Defendants' sales of such products, Coach delivered a letter notifying Defendants of their infringing activity and violation of both federal and state laws, and demanding that all sales of Infringing Products immediately cease and desist. (*See* Cease and Desist Demand Letter attached hereto as **Exhibit 2**.) Still, Defendants' infringing activities continued. In May 2013, for example, an investigator for Coach purchased a duffel-sized bag at Block 37 Mall, 108 North State Street, Chicago, Illinois, that bore the marks Defendants attempted to register with the USPTO and which, based on the label attached to the bag and, by Defendants' admission, was sold by Defendants. (*See* Dkt. No. 47, ¶ 22.B; Dkt. No. 32, p. 6.) Further, in October 2013, Defendants advertised for sale on Di Da's website products bearing logos and source-identifying indicia and design elements that were studied imitations of the Coach trademarks. (*See* Dkt. No. 47, ¶ 22, Exhibits A and B.) *Even after* Di Da was served with the Complaint in the instant lawsuit, Defendants' sales of Infringing Products did not cease and continued for at least several more months. (Dkt. No. 34, p. 3; Dkt. No. 34-3, Shi. Dep. I 381:9-382:4; 383:3-388:23 and Exhibits 21, 22.) ***To this very day***, Defendants continue to prominently use one of the very marks Coach opposed before the USPTO and subject to this

lawsuit, all over Di Da's website. *See* Di Da New York Home Page, http://www.didanewyork.com (last visited March 11, 2016).

Accordingly, Coach requests entry of judgment against Defendants for willful infringement of the Coach Trademarks.

### C. Coach Is Entitled To Statutory Damages And A Permanent Injunction

As shown above, Defendants intentionally and willfully manufactured, distributed, offered for sale, and/or sold merchandise infringing upon the Coach Trademarks. Accordingly, the only two issues left for this Court are (1) the damages to be awarded against Defendants, and (2) what injunctive relief is appropriate.

*1. Coach should be awarded statutory damages of at least $6,800,000 for the infringement of the Coach Trademarks.*

Due to Defendants' dilatory and obfuscating discovery tactics, uncertainty remains regarding the volume of Defendants' sales. Therefore Coach requests that it be awarded statutory damages under the Lanham Act pursuant to 15 U.S.C. § 1117(c); *see also Deckers Outdoor Corp. v. Does 1-55*, No. 11-cv-10, 2011 WL 4929036, *4 (N.D. Ill. Oct. 14, 2011) (recognizing a plaintiff's right to elect, at any time before final judgment is entered, recovery of statutory damages). The Lanham Act authorizes statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c); *see also Coach, Inc. v. Pure MLK Last Stop, Inc.*, No. 12-cv-2254, 2013 WL 5888139, *2 (C.D. Ill. Nov. 4, 2013); *Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 947 (C.D. Ill. 2014). Under the statute, "[t]he trebling of the plaintiff's damages . . . is mandatory (as is the award of the plaintiff's

7

attorney's fees), subject to only the statute's exception for 'extenuating circumstances,' which as we shall see is extremely narrow." *Louis Vuitton v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989); *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan*, LLC, No. 07-cv-0315, 2007 WL 2710479, *2 (S.D. Tex. Sept. 14, 2007).[2]

In applying this statute, courts have recognized that the maximum statutory damages are appropriate in cases involving "willful' violations" of the Act. *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). Further, "[s]tatutory damages are not meant to be merely compensatory or restitutionary. The statutory award is also meant 'to discourage wrongful conduct.' That is why the statute permits consideration of . . . additional damages where an infringement is willful." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–114 (2d Cir. 2001) (addressing statutory damages in connection to copyright infringement) (citation omitted). Statutory damages are most appropriate when, as is the case here, "infringer non-disclosure during fact finding leaves damages uncertain." *Luxottica USA LLC v. The P'Ships & Uninc. Assoc'ns Identified on Schedule "A"*, No. 14-cv-9061, 2015 WL 3818622, *2 (N.D. Ill. June 18. 2015) (citing *Sara Lee,* 36 F. Supp. 2d at 165). Moreover, willful infringement, such as that undertaken by Defendants here, is an "aggravating factor in statutory damages inquiries." *Sara Lee*, 36 F. Supp. 2d at 168.

### a. The Luban factors support a statutory award of not less than $6,800,000 in damages.

In calculating statutory damages in trademark infringement or counterfeiting cases, courts have looked to cases involving willful copyright infringement for guidance. *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 WL 2534378, *4 (N.D. Ill. Nov.

---

[2] Since *Commercial Law*, 15 U.S.C. § 1117(c) was amended to **double** the range of monetary penalties available in civil cases to $1,000 to $200,000 per counterfeit mark used, per type of good and to **double** the amount of monetary penalties available in civil cases that are willful up to $2 million (an increase from $1 million).

8, 2004) (citing *Sara Lee,* 36 F. Supp. 2d at 166). In these cases, courts have generally considered the following factors: "(1) the expenses saved and profits reaped; (2) the revenue lost by the plaintiff; (3) the value of the copyright [trademark]; (4) the deterrent effect on others besides the defendants; (5) whether the defendants' conduct was innocent or willful; (6) whether defendants cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants." *Pure MLK Last Stop,* 2013 WL 5888139, at *2; *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003). "The 'statutory rule' . . . not merely compels restitution of profit and reparation of injury but also is designed to discourage wrongful conduct." *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 U.S. Dist. LEXIS 7913, *14 (2d Cir. Mar. 22, 1999).

Analysis of each of these seven factors weigh in favor of this Court entering a significant judgement against Defendants based upon their "broad, extensive, blatant, and willful" conduct. ***First*,** because Defendants have failed to fully and meaningfully participate in this litigation by failing to provide complete and comprehensive responses to written and oral discovery requests, the Court has scant trustworthy evidence concerning the expenses saved or profits gained by Defendants. *See Wright*, 1992 WL 448394, at **2-3 (holding that "any doubt as to computation of defendant's cost or the amount of profit is to be resolved in favor of plaintiff" and finding that where evidence of a defendant's sales is less than complete or comprehensive, the court can extrapolate the data based on the information available.) In discovery, Defendants produced a catalogue identifying at least thirty-four (34) models of Infringing Products offered for sale and sold by Defendants (*see* **Exhibit 3** attached hereto). The records provided by Defendants for these products (*see* **Exhibit 4** attached hereto), however, are inherently unreliable. The figures in Exhibit 4 purport to represent the total number of Infringing Products *ever* sold by Defendants.

9

Yet, to believe Defendants' sales figures would require believing that Defendants purchased, for example, only 258 items of model 95651 or exactly 337 products with model number C95618/85619, rather than an even number of products such as 250 or 300, respectively, as Defendants have testified that every Infringing Product imported by Defendants was subsequently sold. (*See* October 30, 2014 Deposition of Amy Shi ("Shi Dep. I") 424:11-434:2 (excerpts attached hereto as **Exhibit 5**); August 18, 2015 Deposition of Amy Shi ("Shi Dep. II") 196:20-198:8 (excerpts attached hereto as **Exhibit 6**).) Defendants failed to offer any explanation, let alone a reasonable one, for this discrepancy.

Moreover, because Defendants failed to maintain accurate inventories of the goods they imported from overseas, and, because the Di Da officer preparing the sales figures had never seen an actual inventory log of products purchased, Defendants could not, and cannot confirm that their sales figures in Exhibit 4 are accurate. (Shi Dep. II at 198:9-199:23.) Nor could Defendants even explain how they calculated the average sales price of an Infringing Product. (Shi Dep. I at 431:7-434:2.) As such, Coach cannot reasonably ascertain the extent of the profits reaped by Defendants in selling Infringing Products. ***Second***, and for the same reason, Coach cannot ascertain the damage caused to them by Defendants' specific infringing conduct. *See Sara Lee*, 36 F. Supp. 2d at 170 (holding that uncertainties as to the defendants' sales figures for counterfeit products were to be resolved against the defendants where defendants failed to help clarify exact dollar amounts, sales volumes, or costs).

***Third***, Coach has for decades spent millions of dollars in marketing, product research, and development in the manufacture of their high quality products. (*See* Dkt. No. 47, ¶ 15.) The Coach Trademarks are among the world's most well-known. (*Id.*) By counterfeiting the Coach Trademarks, Defendants benefited directly from Coach's huge expenditures of resources and

10

time in the creation, development, and production of their trademarks and goodwill associated therewith. (*See e.g.*, *id.* at ¶¶ 23, 25, 32, 40, 55.) Defendants understood the value of Coach's efforts and went to great lengths to willfully manufacture, package, and market their goods so as to pass them off as legitimate goods. (*See id.* at ¶¶ 22–27.)

*Fourth*, awarding substantial statutory damages in this case will have the desired effect of providing Coach with a "potent arsenal" of remedies against egregious infringers like Defendants, and discourage other potential infringers from engaging in similar conduct. *See e.g., Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d 889 (N.D. Ill. 2012) (explaining the effect of recovery of statutory damages and attorneys' fees as an arsenal of remedies against copyright infringers); *Engel v. Wild Oats, Inc.*, 644 F. Supp. 1089 (S.D.N.Y. 1986). If this Court were to award only nominal damages, these Defendants, and others similarly situated, would merely factor this cost into their future infringing activities. The granting of substantial statutory damage awards will also deter others from violating Coach's exclusive rights. *See Lorillard*, 2004 WL 2534378, at \*4 (finding that statutory damages are appropriate to "penalize the infringer and deter future violations"); *Philip Morris USA, Inc. v. Castworld Prods, Inc*., 219 F.R.D. 494, 501 (C.D. Cal. 2003) (noting that in considering an award of statutory damages under the Lanham Act in a default situation, deterrence of future infringements must be considered). For these same reasons, the *seventh* factor weighs in favor of a large statutory damages award.

*Fifth*, both the Amended Complaint and Defendants' own admissions establish that Defendants were willfully and intentionally selling Infringing Products. (*See* Dkt. No. 47, ¶¶ 12, 22-25, 31, 32, 39, 40, 46, 54, 55.) As described above, *supra* § II.B, Defendants have an extended history of this willful conduct. Despite Defendants being put on notice through Coach's oppositions to Di Da's trademark registration applications, Coach's cease and desist letter

11

regarding Defendants' infringing conduct, and the filing of this very lawsuit, Defendants have willfully and knowingly continued the sale and offering for sale its Infringing Products. Indeed, this Court previously found that "the record at this juncture reflects an intent by DDI to pass off its products as Coach products, and to unjustly benefit from the reputation and goodwill built up by Coach over the many years of its operations." (Dkt. No. 44, pp. 8-9.) Not surprisingly, given Defendants' failure to participate in this matter, nothing in the record has undermined the Court's original finding. Therefore, this factor militates awarding Coach statutory damages reflecting Defendants' willful conduct.

*Sixth*, as discussed above, Defendants have not produced reliable records concerning their sale of Infringing Products and have prevented Coach from obtaining discovery on the issue. Courts have noted "the creation of this alternative to the more traditional damage remedies of recovery of the plaintiffs' damages or the defendant's profits reflected a harsh reality — counterfeiters often do not keep or secrete records of their unlawful activities, thus making proof of the extent of the plaintiff's injury or the counterfeiters' profits impossible as a practical matter." *Sara Lee*, 36 F. Supp. 2d at 166. Taken together, each of these factors supports an award of significant statutory damages reflecting Defendants' willful and long-standing infringing conduct.

### b. An award of not less than $6,800,000 is warranted.

Coach requests that this Court award statutory damages of not less than $6,800,000 against Defendants. Coach bases its calculations on several factors:

*First*, Coach's pre-suit investigation establishes that Defendants were offering for sale numerous items bearing the Coach Trademarks through wholesale channels and Di Da's website. On or about May 15, 2013, an investigator for Coach purchased a duffle-sized bag from a third-

party vendor located at Block 37 Mall, 108 North State Street, Chicago, Illinois. (Dkt. No. 47, ¶ 22.B.) That bag was designed, manufactured, advertised, promoted, distributed, and/or sold to the third-party vendor by Defendants and, though it was not a Coach product, bore logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks. (*Id*.; *see also* Photographs attached hereto as **Exhibit 7**.) Defendants admit that the duffel bag contained the marks whose registration with the USPTO Coach opposed and which the USPTO refused to register. (*See* Dkt. No. 32, p. 6.) Further, Defendants' website, http://www.didanewyork.com, advertised for sale at least one style of wallet (in three different colors) and at least one style of messenger bag (in seven different colors). (Dkt. No. 47, ¶ 22.A and Exhibits A, B.) These products, too, were not authentic Coach products, but bore logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks. (*Id*.)

*Second*, Defendants manufactured, advertised, promoted, imported, sold, distributed and/or offered for sale, as depicted in seasonal catalogues, at least thirty-four (34) types of goods, which each contained at least one Coach Trademark (*see* **Exhibit 3**), though some contain more (*see e.g.*, **Exhibit 2**). Thus, a statutory damages award of $6,800,000 amounts to $100,000 per infringing mark per type of good. Such an amount is still significantly less than maximum authorized award of $2,000,000 per type of infringing good for willful behavior, 15 U.S.C. §1117(c), willful behavior in which the record evidence has established that Defendants clearly engaged.

*Third*, a statutory award of at least $6,800,000 against Defendants is within the range of awardable damages for non-willful behavior as set by the Lanham Act. 15 U.S.C. §1117(c) (allowing up to $200,000 per mark used per good). It is also less than damage awards for willful

13

behavior as set by the Lanham Act. 15 U.S.C. §1117(c) (allowing up to $2,000,000 per mark used per good for willful infringement).

*Fourth*, this amount is enough to compensate Coach for Defendants' infringing activities, and will convey the message to Defendants and others similarly situated that their infringing activities will not be tolerated by this Court in the future.

*Finally*, this amount is also in line with the awards in other similar willful infringement cases. *See e.g., Pure MLK Last Stop,* 2013 WL 5888139, at *3 (awarding $100,000 per mark per type of good); *Coach v. Goodfellow*, 717 F.3d 498, 501 (6th Cir. 2013) (affirming damages of $5,040,000, or $240,000 per mark per type of good); *Ermengildo Zegna Corp. v. 56th Street Menswear*, No. 06-cv-7827, 2008 WL 4449533, *6 (S.D.N.Y. Oct. 2, 2008) (awarding $200,000 per mark per type of good as appropriate for willful sale of counterfeit suits); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007) (awarding $100,000 each for the five (5) trademarks infringed for a total of $500,000). This is especially true when the Court considers the fact that the damages in *Ermengildo* and *Microsoft Corp.* were rendered *before* Congress *doubled* the authorized damages for both non-willful and willful behavior. Thus, Coach requests that this Court award it statutory damages of not less than $6,800,000, or at least $100,000 per infringing mark per type of good, against Defendants.

    2.    *Coach is entitled to a permanent injunction.*

It is well established that injury arising out of trademark infringement and public confusion causes irreparable harm. *See Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). As such, the Lanham Act provides that injunctive relief may be entered against a defendant who is shown to have willfully and intentionally violated Coach's trademarks. 15 U.S.C. § 1116.

As demonstrated above, Defendants knowingly distributed Infringing Products for years, profiting from this activity despite knowing that the sale of Infringing Products is illegal. (*See* Dkt. No. 47, ¶¶ 12, 22-25, 31, 32, 39, 40, 46, 54, 55.) Despite having their trademark applications opposed by Coach and denied by the USPTO, despite receiving a cease and desist letter from Coach, and despite the initiation of this lawsuit, Defendants refused to comply with the law and cease their infringing activities. Defendants' utter disregard for the law, as well as for the rules and orders of this Court, further establishes that without injunctive relief, Defendants show no intention of ceasing their infringing activity. (*See also id*. at ¶¶ 27, 35, 43, 49, 58, 63, 68.) Defendants willfully and intentionally used infringing marks in the sale and promotion of Infringing Products, and have willfully violated Coach's trademark rights. As such, injunctive relief is of particular importance in this case and Defendants should be permanently enjoined from ever again infringing on the Coach Trademarks.

### III.     CONCLUSION

Statutory damages in trademark infringement and counterfeiting cases must be severe inasmuch as they endeavor not only to compensate trademark holders, but also to deter potential infringers. As shown more fully above, such awards are particularly appropriate under the present circumstances, where Defendants' infringing conduct was willful and intentional, where Defendants have failed to meaningfully participate in discovery and these proceedings, thereby stripping Coach its ability truly uncover the extent of Defendants' infringing activity, and where Defendants have continuously failed to abide by this Court's orders. A proposed order of final default judgment and permanent injunction will be submitted in compliance with the Court's Standing Order.

Dated: March 11, 2016                           Respectfully submitted,
                                                BRYAN CAVE LLP

                                                By: _/s/ __Donald A. Cole
                                                S. Patrick McKey, #6201588
                                                Donald A. Cole, #6299318
                                                Lauren J. Caisman, # 6312465
                                                161 North Clark Street, Suite 4300
                                                Chicago, Illinois 60601
                                                Tel: (312) 602-5000
                                                Fax: (312) 602-5050
                                                *Attorneys for Coach, Inc.*
                                                *and Coach Services, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of March 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                Respectfully submitted,

                                ___/s/ Donald A. Cole___
                                Donald A. Cole